UNITED STATES of America, Appellee,

v.

Herbert E. OTTO, Appellant.

No. 83–5779.

United States Court of Appeals,
Third Circuit.

Argued June 7, 1984.
Decided Aug. 27, 1984.

George E. Schumacher, Federal Public Defender, Thomas S. White, Asst. Federal

Public Defender (argued), Pittsburgh, Pa., for appellant.

Joel M. Gershowitz (argued), U.S. Dept. of Justice, Washington, D.C., J. Alan Johnson, U.S. Atty., Stephen Goldring, Asst. U.S. Atty., U.S. Dept. of Justice, Pittsburgh, Pa., for appellee.

Before WEIS and BECKER, Circuit Judges, and ACKERMAN, District Judge.*

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this appeal from mail fraud convictions, we reject the defendant's contention that the prosecution was required to account for a forty-one month pre-indictment delay. Although convictions of two counts will be affirmed, a third must be vacated because the cited mailing was not in furtherance of the scheme.

Defendant Herbert Otto was indicted on six counts of mail fraud. A jury acquitted him of three counts and convicted him on counts one, five and six. Concurrent prison terms of five years were imposed.

During the period from January 1976 through June 1979, defendant induced investors to entrust him with substantial sums to trade in stock options, a field in which he asserted some expertise. Defendant represented that the money was to be combined with that of others in a pool account he maintained at a local brokerage house. He further assured participants a return of 16 to 30 percent per year.

Defendant gave each victim a promissory note for the principal amount plus the guaranteed return. When the note came due, he often was able to persuade his customers to "roll over" the investment into a new one. In some instances, investors would commit additional sums, and at times defendant would offer "special opportunities," a term used to describe a venture that would realize an attractive return in a shorter time.

Contrary to outward appearances, defendant used funds received from one person to pay others whose notes had come due. In 1977 and 1979, he did no trading through the pool account, although he represented otherwise to his investors.

In 1978, several of the defendant's customers simultaneously demanded payment of the monies due them, and in September investor Edward Ging retained a lawyer to bring suit. Defendant contacted Ging, told him that business was going well, and in a letter promised to pay the money due on a specified schedule. That letter, prepared by Ging but signed and mailed by defendant, was the subject of count one of the indictment.

When defendant was unable to meet the schedule, he and Ging engaged in further negotiations. Ging mailed a letter to defendant on February 16, 1979, setting out the terms of a revised settlement. This letter was the basis for the charge in count five.

In May 1979, Robert and Irene Houston, having invested in one of the "special oportunities," were expecting a check in excess of $30,000 from defendant. Instead, they received a check for $7,000. After unsuccessful attempts to communicate with defendant, the Houstons finally received a telephone call from him during which he said they should not attempt to cash the check because the bank account had been closed.

Nevertheless, Mrs. Houston attempted to cash the check; it was not honored. Frustrated in her further efforts to contact defendant by telephone, she sent him a letter dated June 19, 1979, advising that the check had been returned by the bank. She concluded, "Please make the proper arrangements with the bank so this check can be made good." This letter formed the basis for count six.

At some point the Securities and Exchange Commission commenced an investi-

---

* The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

gation into the defendant's activities. Although that inquiry ended in 1979, defendant was not indicted until March 18, 1983. He contended that the forty-one month delay between the completion of the investigation and the indictment violated his due process rights.

The district court found that defendant had neither suffered substantial prejudice nor shown that the delay was a ploy to gain a tactical advantage. Having failed to meet either of these requirements, the court decided that the government was not required to present its reason for the delay.

■■ On appeal, defendant challenges that ruling. He further contends that there was insufficient evidence for conviction under the mail fraud statute, and that the district court made a number of errors during the trial.[1] We find it necessary to discuss only the first two issues.

## I.

### PRE–INDICTMENT DELAY

At a pretrial hearing, defendant presented evidence to show that because of the passage of time, witnesses' recollections had been impaired and that defendant had been prejudiced by loss of employment, loss of ability to aid in the defense, and deterioration of family relationships. The district court was not persuaded by the testimony about loss of memory and noted that the defendant's personal difficulties "seem rather to be unfortunate, but not uncommon, consequences of investigation by government agents and subsequent indictment." That finding was not clearly erroneous. Moreover, defendant had not presented any proof that the government had arranged the delay to gain a tactical advantage. Because he failed to establish

substantial prejudice, the court held defendant could not require an explanation from the government.

On appeal defendant argues that the due process clause imposes an obligation on the government to explain its inaction whenever a defendant asserts prejudice stemming from a delayed indictment even though the case is commenced within the limitations period. That contention, however, does not accurately describe the obligations of the prosecution.

■■ The primary guarantee against bringing stale criminal charges lies in the applicable statute of limitations. *United States v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966). That legislation balances the government interest in prosecution with the need to protect those who may lose their means of defense. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The statute of limitations is also helpful in prodding law enforcement officials to investigate suspected criminal activity promptly. *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970).

■■ To successfully invoke the due process clause, a defendant must prove actual prejudice and intentional delay by the government to gain a tactical advantage. *Marion*, 404 U.S. at 325–26, 92 S.Ct. at 465–66. Proof of prejudice, however, does not automatically establish the validity of a due process claim; it only makes one "concrete and ripe for adjudication." *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). Once ripe, "the due process inquiry must consider the reasons for the delay as well

---

**1.** Defendant argues that the district judge erroneously excluded evidence of his dealings in a discretionary account and thus prevented him from demonstrating lack of intent to defraud; that the trial judge abused his discretion by making certain remarks to the jury when scheduling longer trial sessions because defendant insisted on proof of authenticity of particular exhibits; that a mistrial should have been granted because of unresponsive and prejudicial re-

marks by government witnesses; that a mistrial was necessary because during the trial it became known that one of the jurors knew a government witness; and that the trial judge erred in giving an abbreviated answer to a question from the jury after indicating to counsel in chambers that he would repeat his charge on the elements of mail fraud. We have carefully reviewed each of these contentions and do not find reversible error in any of them.

as the prejudice to the accused." *Id.* at 790, 97 S.Ct. at 2049. *See also United States v. Feldman,* 425 F.2d 688, 691–92 (3d Cir.1970).

■ An indictment brought within the statute of limitations meets the time restrictions found appropriate by Congress. Therefore, no unfairness or procedural inadequacy results by requiring the accused to produce evidence establishing either prejudice or intentional delay before the government must account for the delay. *United States v. Townley,* 665 F.2d 579, 581–82 (5th Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982). Defendant in this case did not meet his burden and the ruling of the district court was not erroneous.

## II.

### THE MAILINGS

■ The mail fraud statute, 18 U.S.C. § 1341, provides that "whoever, having devised ... any scheme or artifice to defraud, [and] for the purpose of executing such scheme, ... places in any post office ... any matter ... or knowingly causes to be delivered ... any such matter ..." shall be fined or imprisoned or both. Not every use of the mails in connection with a scheme to defraud is punishable under section 1341. *United States v. Tarnopol,* 561 F.2d 466, 471 (3d Cir.1977). To bring the defendant's conduct within the statute, it must be proved that the "mailings were sufficiently closely related to [the] scheme," *United States v. Maze,* 414 U.S. 395, 399, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974), and the scheme's completion depended in some way on the charged mailings. *United States v. Brown,* 583 F.2d 659, 664 (3d Cir.1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979).

■ In some cases, mailings made after the fruits of the scheme have been received may nevertheless come within the

statute "because they are, for example, 'designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place.'" *United States v. Lebovitz,* 669 F.2d 894, 896 (3d Cir.), *cert. denied,* 456 U.S. 929, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982) (quoting *United States v. Maze,* 414 U.S. 395, 403, 94 S.Ct. 645, 650, 38 L.Ed.2d 603 (1974)). It is sufficient if the mailing furthers the scheme or is incident to an essential part of it. *United States v. Adamo,* 534 F.2d 31, 36 (3d Cir.), *cert. denied,* 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976).

■ Against this general statement of the law, we consider each of the three counts for which defendant was convicted.[2] The count one letter of September 25, 1978 to investor Ging came about after defendant became aware that his victim was considering the possibility of a lawsuit. Ging memorialized a settlement in a letter which defendant signed and then placed in the mail.

■ At the time the letter was sent, defendant was still soliciting and obtaining further investments. Indeed, a partial payment made to Ging was from funds obtained from another victim. Although defendant made no further efforts to obtain money from Ging, the evidence was such that the jury could infer that the defendant's letter was an attempt to buy time in order to avoid or at least postpone detection. A lawsuit with its attendant notoriety would alert potential victims to the defendant's duplicity, limit his sources for further funds, and bring the whole scheme crashing down on him. The jury thus had ample evidence on which to conclude that the September 25, 1978 letter was sent in furtherance of the continuing scheme.

---

**2.** Because concurrent sentences were imposed on each of the counts and we find two of them valid, we have the discretion to apply the concurrent sentence doctrine. *United States v.*

*Lampley,* 573 F.2d 783 (3d Cir.1978). We have decided not to follow that procedure in this case.

The count five letter of February 16, 1979, written by Ging, grew out of the defendant's failure to fulfill the terms of the earlier agreement. That letter was an integral part of negotiations with defendant that began before the September 1978 letter. The threat of a lawsuit persisted and the need to avoid adverse publicity to keep the scheme in operation remained a concern. Hence defendant still needed to mollify Ging. From this evidence the jury could conclude this mailing was closely related to the earlier letter and incident to the scheme.

■ Although Ging mailed the February letter, the mailing is nonetheless within the terms of the mail fraud statute. Under the statute, a defendant "causes" the mail to be used when he acts with the knowledge that the use of the mails will follow in the ordinary course of business or where such use can reasonably be foreseen, even though not actually intended, *United States v. Maze*, 414 U.S. at 399, 94 S.Ct. at 647. *See also Lebovitz*, 669 F.2d at 897.

■ Defendant had resorted to the mails to work out the first settlement, and it was reasonably foreseeable that Ging would do likewise in submitting a revision of the original payment plan after negotiations produced new terms. A jury thus would have no difficulty in believing that defendant had "caused" Ging's letter to be sent. We conclude, therefore, there was sufficient evidence to sustain the conviction on count five.

The Houston letter on which count six is based presents a different scenario. It was a unilateral demand that defendant honor his NSF check. Defendant did not directly or impliedly invite such a letter. Its purpose was not to continue a relationship between the parties or arrange for a compromise.

Rather than furthering the operation of the scheme, the Houston letter was a threat to the scheme's further continuation. As such, it was similar to the activity in *Tarnopol*, found not to be in furtherance of the scheme because it "tended to threaten the success of the fraudulent scheme rather than to further it." 561 F.2d at 473. *See also United States v. Brown*, 583 F.2d 659 (3d Cir.1978).

We find the situation under count six similar to that in *United States v. LaFerriere*, 546 F.2d 182 (5th Cir.1977). There the cited mailing was a letter from a victim's attorney threatening civil and criminal action if the defendant failed to acknowledge his obligation to the client. The court observed that the "scheme was in no way dependent upon the mailing or receipt of [the] threatening letter." *Id.* at 186. Indeed, its "only likely effect would be to further detection of the fraud or deter its continuation." *Id.* at 187. Those same comments aptly describe the thrust of the Houston letter.

■ It may be seen that there is a distinction between the Ging and Houston letters. Ging's is in the nature of a proposal to arrange a settlement and thus avoid a confrontation. The Houston notice, by contrast, is an unilateral demand for payment. The likely consequences of the two letters are sufficiently different so that Ging's letter can be considered as being in furtherance of the scheme, but the Houston letter fails that test. We conclude there was insufficient evidence to support a conviction on count six.

Accordingly, the judgments of conviction on counts one and five will be affirmed. The conviction on count six will be vacated and the case will be remanded to the district court to enter judgment of acquittal on that count.