Peter J. PORCARO,
Petitioner, Appellant,

v.

UNITED STATES of America,
Respondent, Appellee.

No. 84–1808.

United States Court of Appeals,
First Circuit.

Submitted Sept. 13, 1985.

Decided April 1, 1986.

Peter Porcaro, on brief, pro se.

Gary S. Katzmann, Asst. U.S. Atty., and William F. Weld, U.S. Atty., on brief, for respondent, appellee.

Before CAMPBELL, Chief Judge, BREYER and TORRUELLA, Circuit Judges.

MEMORANDUM AND ORDER
PER CURIAM.

Petitioner has moved for reconsideration of a portion of our opinion. 784 F.2d 38. Petitioner contends that count 13 of the indictment was barred by the statute of limitations and that hence petitioner received ineffective assistance of counsel since counsel did not move to dismiss count 13.

The relevant statute of limitations, 18 U.S.C. § 3282, is five years. The indictment was returned on June 26, 1981. Count 13 concerns a letter from one of the petitioner's customers, a Mr. Condon, dated October 26, 1976. This date is within five years of the indictment, and hence there is no obvious defect.

Petitioner argues, however, that there is no direct evidence petitioner ever received this letter. Regardless whether receipt of the letter was necessary to the government's case, it would have been permissible for the jury to conclude, from Mr. Condon's testimony concerning mailing, that the letter was received. *See* 1 J. Weinstein and M. Berger, *Weinstein's Evidence* 303–20 (1985).

Petitioner may also be arguing that because the letter was sent by a customer—one of the alleged victim's of the distributorship fraud—and not by petitioner, it is not a mailing in execution of the fraud and therefore cannot serve as a predicate for a mail fraud count. It is true that there are circumstances in which courts have concluded that letters sent by victims could not be viewed as furthering a defendant's fraudulent scheme and consequently could not serve as the basis of a mail fraud charge. *See, e.g., United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974) (fraudulent scheme—unauthorized use of a credit card—was completed once defendant had received goods and services and consequently the suppliers' mailing of invoices to the credit card company were not mailings for the purpose of executing the fraudulent scheme). On the other hand, there are situations where a victim's letter can be an integral part of the fraudulent scheme and thus can support a mail fraud charge. *See, e.g., United States v. Brutzman,* 731 F.2d 1449, 1454 (9th Cir.

1984) (letters from investors seeking refunds sent in response to defendant's assurances that refunds would be available were mailing "for the purpose of executing the scheme"); *United States v. Toney*, 598 F.2d 1349, 1352–1354 (5th Cir.1979) (letters from victim's attorney threatening suit and demanding that defendant repurchase victim's inventory sent after defendant, in an attempt to lull victim into believing dispute might be settled amicably, had requested victim to specify his difficulties could be found to have been mailings in furtherance of the lulling aspect of the fraudulent scheme), *cert. denied*, 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980).

We view the letter in context. As part of his scheme to induce the purchase of distributorships, defendant showed potential purchasers, including Mr. Condon, a projected earnings chart and represented that his company would repurchase unsold products if, at the end of a year, the purchaser had failed to earn a certain profit which, in Mr. Condon's case, was to be $10,000 on his initial investment of $3994. The written distributorship contract specified that if the distributor decided to elect the buy-back option, he was required to notify the company by registered mail.

After a year of servicing his Scripto lighter accounts, Mr. Condon's total gross business was only $946. Consequently, pursuant to the buy-back agreement, he, by letter dated October 26, 1976 (the count 13 letter), notified petitioner he wished petitioner to repurchase the unsold lighters. Mr. Condon also stated in the letter that, having followed petitioner's newspaper advertisements for other products such as Timex, he was interested in the possibility of another product line. Thereafter, Mr. Condon called petitioner, and petitioner told Mr. Condon to remove the inventory from the store and they would discuss matters later.

Against this background, the October 26, 1976 letter could be viewed as an integral part of petitioner's fraudulent scheme. The buy-back offer was a prime feature of the distributorship contracts. Mr. Condon's letter was sent in order to set in motion this very buy-back provision. Un-like the situation in *Maze* where defendant had secured his ill-gotten gains before the mailings in question were sent and the success of his scheme was not dependent upon the mailings, in the present case defendant's finances stood potentially to be affected by further dealings stemming from Mr. Condon's letter. Depending upon how vigorously Mr. Condon pressed his buy-back rights, petitioner, in order to forestall complaints, might have felt obligated to honor the repurchase part of the agreement, which, of course, would have required an expenditure reducing petitioner's gross receipts. Furthermore, petitioner's continuing distributorship advertisements coupled with the conversation following the sending of the October letter manifested the possibility of future dealings and, perhaps, a renewed hope on Mr. Condon's part of eventually realizing the projected profits. As long as business relations were still ongoing, Mr. Condon might be allayed from registering complaints with authorities or otherwise taking action to impede the success of petitioner's distributorship scheme. In these circumstances, the October 26, 1976 letter was sufficiently closely related to petitioner's scheme to support the mail fraud count.

The motion for rehearing is denied.