**UNITED STATES, Appellee,**

v.

**Manuel PIETRI GIRALDI,**
**Defendant, Appellant.**

**No. 86–1559.**

United States Court of Appeals,
First Circuit.

Submitted July 29, 1988.

Decided Dec. 29, 1988.

Manuel Pietri Giraldi, pro se.

Jorge E. Vega Pacheco, Asst. U.S. Atty., and Daniel F. Lopez Romo, U.S. Atty., on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

PER CURIAM.

Appellant, Manuel Pietri Giraldi, appeals from his conviction on two counts of wire fraud under 18 U.S.C. § 1343 and § 2 in connection with a scheme to defraud the Cooperativa de Ahorro y Credito de Fomento (the "Cooperativa"). At trial, the court denied both of appellant's Rule 29 motions for judgment of acquittal.

## I.

The relevant facts are as follows. In September, 1980, appellant and Ronald Wainwright formed Pietri & Wainwright, a management consulting firm. This firm specialized in the recruitment of management personnel for United States companies doing business in or planning to establish offices in Puerto Rico. Appellant was the president of the partnership. The primary bank used by Pietri & Wainwright was the Banco Popular. However, because the offices of the partnership were in the same building as the offices of the Cooperativa, they also opened an account at the Cooperativa. Although used primarily for savings, the partnership regularly made deposits and withdrawals from this account.

On March 24, 1982, Wainwright received a check, payable to one Roberto Anguita, from Pietri for deposit into the Cooperativa account. However, because of a discrepancy between the numbers on the check ($78,-560.00) and the written amount (seventy-eight thousand and sixty dollars), the check was returned to Wainwright. This left a balance of $51.87 in the account.

At this time, Pietri made a trip to Miami and returned with five money orders and a check. The check was drawn on the account of Gales Manufacturing Corporation and was made out to Charles B. Sanders in the amount of $10,625. The money orders were from the First Federal Savings and Loan Association of Miami, Florida, payable to Roberto Anguita for $6,864.32, $8,318.00, $9,872.25, $6,653.50 and $9,318.50 respectively. These six items totaled $51,651.57. Upon deposit of the check and money orders, Wainwright withdrew in cash an amount equal to the deposit, except for the $10,625 represented by the amount of the check. Wainwright gave the money to Pietri, leaving in the Cooperativa account a balance of $10,-677.84. Eventually, the money orders were returned, stamped "no account at this location." The check also was returned, stamped "account closed." As a result, the Cooperativa sustained a loss of approximately $44,000.

In an attempt to recoup its losses, the Cooperativa brought suit against appellant and Wainwright. In March, 1983, the Cooperativa and appellant agreed to settle the claim for $45,000. He and one Diana Alicia Coimbre promised to pay the debt in full by July 31, 1983. To guarantee full payment, appellant tendered a certificate of deposit issued on January 30, 1982 with a face value of $50,000 and a value of $63,312.50 on the date of maturity—July 19, 1983. The Bank of Commerce of St. Kitts and Nevis Trust and Savings Association, L.T. D. of Basseterre, St. Kitts, West Indies apparently issued the certificate of deposit.

Appellant testified that he received the certificate of deposit from Eugene Walwyn, the president of the Bank of Commerce of St. Kitts, and a business partner of appellant. The certificate of deposit represented a guarantee on a commission appellant already had earned. Appellant also testified that the certificate of deposit given to the Cooperativa was the same type of certificate that Walwyn had asked appellant to destroy while appellant was in Germany in 1982.

On July 22, 1983, the Cooperativa asked its bank, Banco de Ponce, to verify the certificate of deposit and aid the Cooperativa in its collection. As a result, a telex was sent from the Banco de Ponce to the bank in St. Kitts that allegedly had issued the certificate of deposit. This telex requested confirmation of the issuance of "CD NO. 0443." On July 25, 1983, the bank in St. Kitts replied by telex, stating that they could not identify CD NO. 0443 and requesting a photocopy. A copy of the certificate of deposit was sent and the Bank of Commerce in St. Kitts replied by letter disclaiming issuance of the certificate. These two telexes formed the basis

of the two count indictment against appellant.

On appeal, appellant presents seven issues: (1) abuse of discretion by the trial court in admitting the letter disclaiming the issuance of the certificate of deposit; (2) the failure of the trial court to give a limiting instruction regarding the letter; (3) abuse of discretion by the trial court in imposing restitution; (4) insufficiency of the indictment to charge a crime within federal jurisdiction; (5) prosecutorial misconduct; (6) incompetence of appellant's court-appointed attorney; and (7) insufficiency of the evidence at trial to establish, beyond a reasonable doubt, a violation of 18 U.S.C. §§ 1343 and 2. Because we agree with appellant's seventh contention, we need not discuss the remaining six issues.

## II.

To prevail on his claim that there was insufficient evidence to support a conviction under the wire fraud statute, appellant must demonstrate that the evidence before the jury and all reasonable inferences drawn therefrom, viewed in the light most favorable to the government, were insufficient to establish his guilt beyond a reasonable doubt. *United States v. Forzese*, 756 F.2d 217, 219–20 (1st Cir.1985).

Section 1343 of title 18, under which appellant was convicted, provides, in applicable part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or *causes to be transmitted by means of wire* ... communication in interstate or foreign commerce, any writings ... *for the purpose of executing such scheme or artifice,* shall be fined not more than $1,000 or imprisoned not more than five years, or both. (Emphasis added.)

We have held that, in general, case law construing 18 U.S.C. § 1341 (mail fraud) is instructive for purposes of § 1343. *United States v. Fermin Castillo*, 829 F.2d 1194, 1198 (1st Cir.1987).

Appellant's primary argument is that the two telexes forming the basis of the wire fraud charges—the telex from Banco de Ponce to St. Kitts to verify the CD and the telex in reply from St. Kitts indicating the CD could not be identified—were not in furtherance of the scheme alleged in the indictment. An inquiry into whether the telexes were "for the purpose of executing" the scheme involves an inquiry into whether the use of the wires was "sufficiently closely related to [appellant's] scheme to bring his conduct within the statute." *United States v. Maze*, 414 U.S. 395, 399, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974) (footnote omitted); *Fermin Castillo,* 829 F.2d at 1199 (communications "must have touched one or more of the core transactions of the plot"); *United States v. Castile*, 795 F.2d 1273, 1277–78 (6th Cir.1986).[1] To be in furtherance of the scheme, "the scheme's completion or the prevention of its detection must have depended in some way on the charged [telexes]." *Castile,* 795 F.2d at 1278 (mail fraud). Indeed, "[wires] occurring after receipt of the goods obtained by fraud are within the statute if they 'were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no [telexes] had taken place.'" *United States v. Lane*, 474 U.S. 438, 451–52, 106 S.Ct. 725, 733, 88 L.Ed.2d 814 (1986) (mail fraud) (quoting *United States v. Maze*, 414 U.S. 395, 403, 94 S.Ct. 645, 650, 38 L.Ed.2d 603 (1974)). If the purpose of the telexes conflicts with, rather than promotes, the scheme, however, the telexes cannot support a conviction under § 1343. *See Castile,* 795 F.2d at 1278; *cf. Maze,* 414 U.S. at 402–03, 94 S.Ct. at 649–50.

In the instant case, it is difficult to see how the two telexes furthered appellant's

---

1. *Maze* and *Castile* involve mail fraud, hence we have paraphrased the language. *Fermin Castillo* was a wire fraud case.

scheme. The government contends that the procurance of the sham certificate of deposit was to lull the Cooperativa into believing that the debt owed to it was secure. As a result, the government argues, the scheme was ongoing as long as the Cooperativa held the certificate of deposit. Because the two telexes were sent during this time and before July 31, 1983, the date by which appellant had promised to fulfill his obligation of repayment, the government concludes that they were "closely related" to an ongoing scheme.

We do not agree. Although any communications regarding the placing of the certificate of deposit with the Cooperativa probably were to lull it and to prevent it from taking further legal action, the purposes of the telexes were to verify and collect on the certificate of deposit. Rather than lull the Cooperativa or prevent detection of the scheme, these telexes could only (and did) lead to the discovery that the certificate of deposit was false. This case is similar to *Maze* in which the defendant had used a stolen credit card to obtain services from motel operators. These motel operators would then transmit, by mail, to the bank which had issued the credit card, the invoices representing the goods and services furnished to defendant. In holding that the mailings were not "sufficiently closely related" to defendant's scheme, the Court held that

> the mailings here were directed to the end of adjusting accounts between the motel proprietor, the Louisville bank, and [the owner of the card], all of whom had to a greater or lesser degree been the victim's of respondent's scheme. Respondent's scheme reached fruition when he checked out of the motel, and there is no indication that the success of his scheme depended in any way on which of his victims ultimately bore the loss. Indeed, from his point of view, he probably would have preferred to have the invoices misplaced by the various motel personnel and never mailed at all.

414 U.S. at 402, 94 S.Ct. at 649 (footnote omitted). The Court also pointed out that the mailings increased the likelihood that defendant would be apprehended. *Id.* at 403, 94 S.Ct. at 650.

Appellant, here, also probably would have preferred that the telexes not be sent at all since the ultimate result was the detection of his scheme. *See Castile*, 795 F.2d at 1279–81 (letters regarding insurance company's investigation into possibility that appellant committed arson were not in furtherance of the scheme to collect fire insurance proceeds, but were for the sole purpose of defeating the scheme); *United States v. Otto*, 742 F.2d 104, 109 (3d Cir. 1984) (where defendant induced victims to let him invest their money, a unilateral demand by one of the victims that defendant honor a NFS check supposedly reflecting earnings on her investment was not in furtherance of the scheme because it was a threat to the continuation of the scheme), *cert. denied*, 469 U.S. 1196, 105 S.Ct. 978, 83 L.Ed.2d 980 (1985); *United States v. LaFerriere*, 546 F.2d 182, 187 (5th Cir. 1977) (where scheme involved inducing victims to pay points into an escrow account in order to obtain mortgage commitments, letter sent by victim's lawyer threatening suit if a verified letter was not sent stating that the money was still in escrow, not in furtherance of scheme as only likely effect of the letter would be to further detection of the scheme).

This case stands in contrast to those in which lulling has been found. For example, in *United States v. Martin*, 694 F.2d 885 (1st Cir.1982), defendant engaged in insurance fraud by forging clients' signatures, creating applications with false information, overcharging clients on premiums, selling insurance in disregard of already existing policies and stealing money from clients. We held that a letter sent by defendant to an insurance company denying his conversion of a refund check was a "deliberate attempt to lull detection of an ongoing insurance fraud scheme...." *Id.* at 890.

In *Porcaro v. United States*, 789 F.2d 73 (1st Cir.1986), another lulling case, we held that a letter by a victim to the perpetrator of a fraudulent scheme was in furtherance of the scheme. In *Porcaro*, the defendant induced the purchase of distributorships by

representing that his company would re-purchase unsold products at the end of the year if the purchaser had failed to make a certain profit. The contract specified that to elect the buy-back provision, a letter must be sent by registered mail.

The victim complied with the above provision and notified the defendant that he wished defendant to repurchase the unsold merchandise. The letter also stated that the victim was interested in some of defendant's other products. The defendant, in response to a phone call from the victim, told him to remove the unsold inventory and that they would discuss the matter later.

We held that the victim's letter, although potentially dangerous to the continuation of defendant's distributorship scheme, was still in furtherance of the scheme. *Id.* at 74. We noted that the buy-back offer was a major feature of the distributorship agreements and that the victim's letter was sent to set in motion this very contract provision. We also pointed out that, depending on how vigorously the victim pressed his claim, defendant might be forced to honor the buy-back provision in order to forestall further complaints. *Id.* Moreover, business relations between the two were still ongoing and the letter mentioned the possibility of further dealings. Thus, the victim might be allayed from making complaints to the authorities if defendant continued to deal with the victim. *Id.* In such circumstances, the letter was "closely related to the scheme." *Id.*

In contrast to *Martin* and *Porcaro* the telexes here did not engender any circumstances in which appellant could do anything to forestall discovery that the certificate of deposit was anything but a sham. Rather, the telexes conflicted with appellant's scheme because they could only result in detection of the scheme. As a result, it cannot be said that the telexes were "closely related" to the scheme in any sense.

The judgment of conviction is therefore reversed.