UNITED STATES of America

v.

Robert C. BENTZ;  Ronald T. Ross,

Ronald T. Ross, Appellant.

No. 93–3340.

United States Court of Appeals,
Third Circuit.

Argued Jan. 27, 1994.

Decided April 11, 1994.

Thomas S. White (argued), Office of Federal Public Defender, Pittsburgh, PA, for appellant.

Paul J. Brysh, Michael L. Ivory (argued), Office of U.S. Atty., Pittsburgh, PA, for appellee.

Before: MANSMANN and NYGAARD, Circuit Judges and WEIS, Senior Circuit Judge.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Ronald T. Ross entered a conditional guilty plea to one count of wire fraud in violation of 18 U.S.C. §§ 2 and 1343. In doing so, however, he preserved his·challenge to the wire transmission element of § 1343. The government argues that Ross waived this issue as it relates to causation. We conclude that Ross did not waive the issue and, moreover, that he did not cause use of the wire in violation of § 1343. Therefore, we will reverse the judgment of conviction against Ross and remand the cause with instructions to dismiss the indictment.

■ The district court had jurisdiction under 18 U.S.C. § 3231 and we exercise jurisdiction under 28 U.S.C. § 1291. Whether Ross waived the use of the wire argument is determined by Ross's conditional plea agreement, because a defendant who enters a conditional plea can only appeal issues that have been preserved for review. *See* Fed. R.Crim.P. 11(a)(2); *United States v. Markling*, 7 F.3d 1309, 1313 (7th Cir.1993) (requiring that conditional plea "precisely identify which pretrial issues the defendant wishes to preserve for review"); *United States v. Wiley*, 997 F.2d 378, 385 (8th Cir.) (declining to address claim that defendant entering conditional plea had failed to preserve), *cert. denied*, —— .U.S. ——, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993). Since our inquiry into the terms of Ross's plea agreement raises questions of·law, our review is plenary. *See United States v. Moscahlaidis*, 868 F.2d 1357, 1360 (3d Cir.1989) (applying plenary review over legal question of whether the government violated a plea agreement). Our standard for reviewing the statutory construction of 18 U.S.C. § 1343 (the wire transmission element) is also plenary. *United States v. Barel*, 939 F.2d 26, 31 (3d Cir.1991).

## I.

■ Ross was indicted for defrauding Vac Air Alloys Corporation, a scrap metals broker, by representing that the metal he sold to Vac Air was stainless steel when it was not. He charged Vac Air for stainless steel but actually delivered metal worth considerably less. Ross unloaded his deliveries at Vac Air's storage facility in Pennsylvania and he was paid by checks generated through Vac Air's mainframe computer in New York. The check amounts were based on information sent by computer from Pennsylvania to New York. Thus, Ross's actions were alleged to have caused a wire transmission in interstate commerce for the purpose of executing his scheme to defraud.

Ross entered a plea of not guilty and moved to dismiss the indictment. His written motion raised three arguments: (1) the prosecution was time-barred; (2) the wire transmissions were not for the purpose of executing a fraudulent scheme; and, (3) the indictment erroneously charged attempt which is not illegal under the wire fraud statute. The district court held a hearing on this motion and heard testimony from Ross, Robert Bentz, a co-defendant, and Amy Fleissner, a Vac Air employee.[1]

Following this testimony, Ross's attorney elaborated on his wire transmission argument:

Your Honor, we believe the evidence shows here that no real evidence, no real information was generated from New York to Pittsburgh, to authorize the payments of these checks. The law is that one causes the mail to be used when he acts with knowledge that the use of the wire will follow in the ordinary course of business, or where such use can reasonably be foreseen even though not actually intended.

As far as Mr. Ross is concerned, there is no evidence here that would indicate to him that any information was relayed from New York to Pittsburgh to authorize the payment of these checks. *Therefore, the issue of whether the wire has been—whether the defendants have caused the issuance*

---

**1.** Because the government did not oppose the hearing, we need not decide whether the procedure here was appropriate. *See United States v. Donsky*, 825 F.2d 746, 751 (3d Cir.1987).

*and use of the wire, I don't think has been anywhere nearly established.*

As a matter of fact, I think it is established that they did not know that the wire information would be used in this case. Therefore, on that element, the law would say that they cannot be found guilty of this charge, where there is no information that either Mr. Ross or Mr. Bentz had any idea that this information was being relayed to New York and then relayed back to Pittsburgh.

The district court denied Ross's motion to dismiss on the ground that "[t]he preliminary evidence shows that the defendants used interstate wires in furtherance of the alleged fraudulent scheme sufficient to render this case within our jurisdiction."

The parties later agreed to a conditional plea, but the plea agreement letter prepared by the government stated that: "The only issues we have agreed you may reserve for appeal were those raised specifically in your written Motion to Dismiss." Nonetheless, the transcript of the change of plea hearing indicates that neither the district court nor Ross's attorney distinguished between the concepts of purpose and causation in relation to use of the wire:

MR. WHITE [Ross's attorney]: Your Honor, I just want to inform you that there—maybe nobody has informed you yet—that this is a conditional plea.

THE COURT: No, I have not been informed of that. Is the government willing to take this?

MR. HULL [government's attorney]: We have set forth our agreement in the letter, the terms of that agreement.

THE COURT: That is based on my ruling on the use of the wire?

MR. WHITE: That is correct, Your Honor.... [W]e would ask Your Honor to make findings of fact and conclusions of law on our motion....

THE COURT: You mean findings of fact and conclusions of the law with respect to the use of the wire?

MR. WHITE: That is right....

Ross's attorney later stated that: "We will accept responsibility for the scheme, and then we will challenge the wire part, whether or not the wire was used in the execution of the scheme." After pleading guilty, Ross moved for reconsideration of his motion to dismiss and once again raised the causation issue. During the sentencing hearing, the district court denied this motion and Ross's request for specific findings of fact and conclusions of law. The court effectively relied on the testimony developed during the hearing on Ross's motion to dismiss, stating that the transcript of this hearing "speaks for itself."

## II.

The conditional plea agreement letter states that only the issues raised in Ross's *written* motion to dismiss are preserved. But, Ross's attorney clearly posited an expanded wire transmission argument during the hearing on the motion. Having made an agreement with Ross to obtain a guilty plea from him, the government now seeks to nullify that agreement by interpreting away the very issue that Ross placed in contention before the district court. Although he did not plead in the precise language of the law, Ross did not ambush anyone with the issue he now raises. Frankly, we are surprised that the government would seek to enforce such a crabbed interpretation of the conditional plea agreement. Moreover, if it purposefully crafted the agreement so that the defendant would unwittingly waive his causation argument, we expressly disapprove of such tactics. Since the district court ruled that Ross's use of the wire was sufficient to confer federal jurisdiction, and it is clear that Ross neither intended to nor waived his sole argument, we will not rest on procedural punctilios when the legitimacy of a criminal indictment is at stake. We hold that the arguments raised by Ross's attorney during the motion hearing were incorporated into his written motion and preserved for appeal.[2]

---

**2.** Based on this conclusion, we need not reach the issue of whether a guilty plea waives jurisdictional as well as nonjurisdictional defects. *Compare United States ex rel. Shank v. Pennsylvania,* 461 F.2d 61, 62 (3d Cir.1972) (asserting that guilty plea waives all nonjurisdictional defects),

## III.

■■■· Ross pleaded guilty to violating 18 U.S.C. § 1343, which provides in relevant part that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both....

18 U.S.C.A. § 1343 (West Supp.1993). Ross does not challenge the "scheme to defraud" element of § 1343, and the government does not contend that he personally sent a wire transmission. Thus, the only issue before us is whether Ross knowingly caused someone to use the wire.

In *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), the Supreme Court defined the "use of the mails" requirement for mail fraud, stating that: "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Id.* at 8–9, 74 S.Ct. at 363 (citing *United States v. Kenofskey*, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836 (1917)); *see also United States v. Otto*, 742 F.2d 104, 109 (3d Cir.1984) (reiterating *Pereira* causation standard), *cert. denied*, 469 U.S. 1196, 105 S.Ct. 978, 83 L.Ed.2d 980 (1985). Recognizing that "cases construing the mail fraud statute are applicable to the wire fraud statute as well," *United States v. Giovengo*, 637 F.2d

941, 944 (3d Cir.1980) (quoting *United States v. Tarnopol*, 561 F.2d 466, 475 (3d Cir.1977)), *cert. denied*, 450 U.S. 1032, 101 S.Ct. 1743, 68 L.Ed.2d 228 (1981), we turn to whether the record demonstrates that Ross knew that the wire would be used in the ordinary course of business or should reasonably have foreseen such use. *See United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir.1992) (applying *Pereira* causation standard to wire fraud).[3]

### A.

Whether an act occurs in the ordinary course of business is related to foreseeability, and in *United States v. Fermin Castillo*, 829 F.2d 1194 (1st Cir.1987), the court applied the two tests in conjunction while examining a scheme to defraud a foreign poultry breeder by accepting payment for corn which was never delivered. *Id.* at 1197–99. In *Fermin Castillo*, payment was made after an exchange of information through telexes between a bank in the Dominican Republic and its correspondent bank in Puerto Rico. The court held that: "It is reasonably foreseeable that, in the ordinary course of time-critical business between a correspondent bank and a foreign bank seeking the formulation of an L/C [letter of credit], telexes will have to be sent." *Id.* at 1198; *see also United States v. Alanis*, 945 F.2d 1032, 1037 (8th Cir.1991) (holding that mailing of check by insurance company in insurance fraud scheme "occurred in the ordinary course of business"), *cert. denied*, — U.S. —, 112 S.Ct. 906, 116 L.Ed.2d 807 (1992).

■■■ Theoretically, however, the two methods of proving causation are distinct. Under *Pereira*, the ordinary course of business prong requires knowledge, whereas reasonable foreseeability is an objective test. *See United States v. Muni*, 668 F.2d 87, 90 (2d

---

cert. denied, 409 U.S. 1110, 93 S.Ct. 917, 34 L.Ed.2d 691 (1973) *and United States ex rel. Jenkins v. Hendricks*, 405 F.2d 182, 183 (3d Cir. 1968) (same) *with United States v. Mathews*, 833 F.2d 161, 164 (9th Cir.1987) (asserting that guilty plea "establishes the factual basis for jurisdiction") (cited in *United States v. Parker*, 874 F.2d 174, 178 (3d Cir.1989)).

**3.** Our examination of causation is distinguishable from one involving purpose, whether a wire

transmission was "in furtherance" of a fraudulent scheme. *See Schmuck v. United States*, 489 U.S. 705, 710, 109 S.Ct. 1443, 1447, 103 L.Ed.2d 734 (1989) (use of the mails must be "part of the execution of the fraud"); *Otto*, 742 F.2d at 108 (mailings must be "sufficiently closely related" to the fraud). Here, we focus on knowledge and foreseeability in relation to the wire transmission, not on the nexus between the wire transmission and the fraud.

Cir.1981). Use of the wire in the ordinary course of business alone is not enough; the defendant must have knowledge of that course of business. This prong of the causation requirement has both a general and a specific component. For example, a defendant may know that a nationwide insurer, credit card company or foreign company generally uses interstate wire transmissions in the ordinary course of business. In contrast, a defendant may also know that a particular company, local in scope and in an industry which generally does not use the wire, has a specific practice of doing so in the ordinary course of business.

During oral argument, the government conceded that it had provided the district court with no evidence that Ross knew that Vac Air used wire transmissions in the ordinary course of their business. The record confirms that the government did not prove causation under this test. Robert Bentz testified that he worked for Vac Air as the general foreman and assistant plant supervisor. He stated that the payment procedure for small loads (between 10,000 and 30,000 pounds) was to give the vendor a scale ticket indicating the weight of the load. The vendor could then take the ticket to the plant supervisor for immediate payment. Bentz recounted that he had seen secretaries in the Vac Air office typing out checks. Although he admitted that he did not know about the two checks in this indictment, Bentz attested that the amounts of these checks indicated that they were in payment for small loads.

Next, Ross testified that he generally would unload the metal he was selling and then give the scale ticket to the plant supervisor who would give it to a secretary to type up an invoice and a check. Ross stated that he was not aware that Vac Air transferred any information from Pennsylvania to New York and that the two checks listed in the indictment were both drawn on a Pennsylvania bank. Ross admitted that the secretaries sometimes prepared checks outside of his presence, but he did not know whether Vac Air had a computerized check procedure.

The last witness was Amy Fleissner, who worked in Vac Air's accounts payable depart-ment. She testified that her job "was to either request and pay all the checks through the computer system or to type manual checks as requested." Fleissner identified the two checks listed in the indictment as being computer-generated. She explained that Vac Air's computer system in Pennsylvania was connected to a mainframe computer in New York, and that she would regularly "input information into the system, as to the vendor, type of material, [and] the amount received...." She would then receive a report from New York which was kept with the scale ticket, and either type the check or generate a check by computer. Fleissner admitted, however, that she had never discussed with Bentz or presumably with Ross how she prepared these checks.

Nothing in the record supports an inference that Ross knew Vac Air used wire transmissions in the ordinary course of business. Although Fleissner testified about Vac Air's payment procedures, there is no evidence that Ross knew that these procedures involved wire transmissions. To the contrary, Ross attested that his understanding was that the checks were typed up in Vac Air's Pennsylvania office and drawn on a Pennsylvania bank.

### B.

Reasonable foreseeability, on the other hand, marks the territory between "but for" causation and actual knowledge of causation. The government admitted during oral argument that there was not much evidence supporting this theory. We conclude that the objective standard of reasonable foreseeability is not supported by the record. Although "[t]he content of reasonable foreseeability must inevitably keep pace with advances in technology and general awareness of such advances," *Muni,* 668 F.2d at 90, use of the wire by a scrap metal storage facility in Pennsylvania which issues checks drawn on a Pennsylvania bank is not self-evident. Nor is there sufficient evidence for us to conclude that Ross should reasonably have anticipated that Vac Air made wire transmissions when preparing his checks.[4]

---

4. *Cf. United States v. Turley,* 891 F.2d 57, 60 (3d Cir.1989) (use of mails in scheme to receive

## C.

 Finally, we reject the government's request for a remand to expand the record. Having agreed to a conditional plea, the government is not entitled to a second opportunity to prove causation. Moreover, a remand for further proceedings would defeat the very purpose of Rule 11(a)(2), which governs the procedure for conditional pleas and states that:

> With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

Fed.R.Crim.P. 11(a)(2). Rule 11(a)(2) is designed "to conserve prosecutorial and judicial resources and advance speedy trial objectives;" it also avoids "the necessity for trials which are undertaken for the sole purpose of preserving pretrial objections." Fed. R.Crim.P. 11 advisory committee's note.

A conditional plea is predicated on the considered judgment of the court and the government:

> The requirement of approval by the court is most appropriate, as it ensures, for example, that the defendant is not allowed to take an appeal on a matter which can only be fully developed by proceeding to trial.... As for consent by the government, it will ensure that conditional pleas will be allowed only when the decision of the court of appeals will dispose of the case either by allowing the plea to stand or by such action as compelling dismissal of the indictment or suppressing essential evidence.

*Id.; see also* Fed.R.Crim.P. 11(f) (requiring court to be satisfied with factual basis for guilty plea before entering judgment). Thus, a conditional plea is only appropriate when

the matter preserved for appeal is case-dispositive and requires no further factual development. In accepting Ross's conditional plea, the district court relied on the record created during the motion hearing as the factual basis for causation. Similarly, the government essentially rested its case regarding use of the wire by consenting to the conditional plea. There is no reason for further proceedings in this matter.

## IV.

In sum, we conclude that Ross did not waive his challenge to use of the wire in relation to causation, and that the record is insufficient to support a finding that Ross caused a wire transmission for purposes of 18 U.S.C. § 1343. Accordingly, we will reverse the judgment of conviction and remand with instructions to dismiss the indictment.

---

commissions from fraudulent insurance applications was reasonably foreseeable); *Otto*, 742 F.2d at 109 (victim's use of the mails to communicate with defendant in stock fraud scheme was reasonably foreseeable); *United States v. Sturm*, 671 F.2d 749, 751 (3d Cir.) (use of mails in fire insurance fraud scheme was reasonably foresee-

able), *cert. denied*, 459 U.S. 842, 103 S.Ct. 95, 74 L.Ed.2d 86 (1982); *United States v. Lebovitz*, 669 F.2d 894, 898 (3d Cir.) (use of mails in medical insurance fraud scheme was reasonably foreseeable), *cert. denied*, 456 U.S. 929, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982).