**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 08-2549

————

UNITED STATES OF AMERICA

v.

JOHN J. KELLER,
Appellant

————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-07-00051-001)
District Judge: Hon. Thomas M. Golden

————

Argued September 14, 2010

Before: SLOVITER, BARRY and SMITH, <u>Circuit Judges</u>

(Filed: September 27, 2010)

————

Philip D. Lauer (Argued)
Lauer, Paglianite & Sletvold
Easton, PA 18042

    Attorney for Appellant

Seth Weber
Robert A. Zauzmer (Argued)
Office of United States Attorney
Philadelphia, PA 19106

    Attorneys for Appellee

———

OPINION

———

SLOVITER, *Circuit Judge*.

Appellant John Keller ("Keller") appeals his convictions for wire fraud and the sentence he received from the District Court, arguing foremost that the evidence was insufficient to show that he caused an interstate wire communication or that any such communication was sufficiently connected to his scheme to defraud.

**I.**

In August 2001, Keller, a lawyer, undertook to represent Tanya Slavinsky in connection with the sale of her mother's house. Keller charged Slavinsky $27,000 for his services, which she paid in full. Keller placed $300,000 of the proceeds from the sale of the home in an Interest on Lawyers' Trust Account ("IOLTA Account") at a PNC Bank located in Pennsylvania on Slavinsky's behalf. Keller later withdrew $75,000 from that account and gave it to Slavinsky.

Despite repeated assurances by Keller that he could not spend the money without her consent, over the course of two years Keller, unbeknown to Slavinsky, wrote dozens of checks from the IOLTA account and deposited them in his firm's account, held at what is now Wachovia Bank, also in Pennsylvania. Keller used the money to pay his own expenses and those of his law firm.

2

In 2007, Keller was indicted on seventeen counts of wire fraud in violation of 18 U.S.C. § 1343, as part of a scheme "to steal approximately $225,000 from [Slavinsky] by making unauthorized disbursements of money from his IOLTA account for personal and business expenses." App. at 46 The jury found Keller not guilty of the first five counts, but convicted him of the other twelve. During sentencing, the District Court found that Keller was responsible for a $225,000 loss to Slavinsky, which added twelve levels to the guidelines calculation. The District Court sentenced him to fifty-seven months of imprisonment on each count to run concurrently, and mandated $225,000 in restitution payable to Slavinsky.

Keller moved for acquittal and/or for a new trial on the grounds that there was insufficient evidence on which to convict, the jury instructions were deficient, and the District Court erred in the loss calculation at sentencing. The District Court rejected his arguments and Keller timely appealed.[1]

**II.**

When the sufficiency of the evidence is challenged, we view the evidence in a light most favorable to the Government and must sustain the jury's verdict if there is substantial evidence to support it. *United States v. Antico*, 275 F.3d 245, 260 (3d Cir. 2001). We agree with the District Court that, based on the evidence presented at trial, a

---

[1] The District Court had jurisdiction over Keller's claims under 18 U.S.C. § 3231. We have appellate jurisdiction over the final decision of the District Court under 28 U.S.C. § 1291.

3

reasonable jury could have found beyond a reasonable doubt the essential elements of

wire fraud: (1) the defendant's knowing and willful participation in a scheme or artifice

to defraud, (2) with the specific intent to defraud, and (3) the use, or cause of use, of

interstate wire communications in furtherance of the scheme.[2]  *Id.* at 261.  Keller only

challenges the District Court's finding as to the third element, which has two prongs.

With respect to the first prong, causation, we have held that "'[w]here one does

an act with knowledge that the use of the mails will follow in the ordinary course of

business, or where such use can reasonably be foreseen, even though not actually

intended, then he 'causes' the mails to be used.'"[3]  *United States v. Bentz*, 21 F.3d 37, 40

(3d Cir. 1994) (internal citations omitted).  Keller need not have known or reasonably

foreseen the interstate nature of the wire transmissions, but solely that wire transmissions

---

[2] In relevant part, the wire fraud statute provides:

> Whoever, having devised or intending to devise any scheme
> or artifice to defraud, or for obtaining money or property by
> means of false or fraudulent pretenses, representations, or
> promises . . . [uses wires, or causes their use, in interstate
> commerce] for the purpose of executing such scheme or
> artifice, shall be fined under this title or imprisoned not
> more than 20 years, or both.

18 U.S.C. § 1343.

[3] The analysis from mail fraud cases is transferrable to wire
fraud cases.  *See United States v. Morelli*, 169 F.3d 798, 806 n.9
(3d Cir. 1999) ("the wire fraud and mail fraud statutes differ only
in form, not in substance, and cases . . . interpreting one govern the
other as well").

would occur. *See, e.g., United States v. Blassingame*, 427 F.2d 329, 330 (2d Cir. 1970) ("statute does not condition guilt upon knowing that interstate communication is used"), cited with approval in *United States v. Iannelli*, 477 F.2d 999, 1002 (3d Cir. 1973). During oral argument, Keller conceded that the use of wire communications in clearing the transfer of checks was reasonably foreseeable. We agree.

To satisfy the second prong, that the wire communications be in furtherance of the fraud, "the use of the [wires] need not be an essential element of the scheme," but rather, "[i]t is sufficient for [the use of the wires] to be incident to an essential part of the scheme, or a step in the plot." *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989) (internal citations, quotations, and brackets omitted). To complete the settlement process between the banks, the daily aggregated data from PNC and Wachovia was transmitted electronically from the respective Pennsylvania bank to the Clearing House Company ("SVPCO") in New York and vice versa. The District Court found that the repeated interstate clearing of checks, as part of an on-going scheme to defraud Slavinsky of the full $225,000 held in the IOLTA account, satisfies the use of wires element of federal wire fraud. We agree.

The District Court distinguished *Kann v. United States*, 323 U.S. 88 (1944), which involved a one-time cashing of a check where the mails were used by the bank after the defendants had already received the cash. The District Court found that, like the Supreme Court's decision in *Schmuck* where the fraud depended on the continued

clearing of title of doctored cars, Keller's scheme "hinged on the continued clearing of his checks . . . ." App. at 15. If any of the checks failed to clear, the funds would not be transferred and Keller's scheme would fail. *See also Pereira v. United States*, 347 U.S. 1, 8 (1954) (interstate clearing of check held to be incident to an essential part of the scheme); *United States v. Tiller*, 302 F.3d 98, 103 (3d Cir. 2002) (mailing element met in on-going fraud where defendant submitted several false claims to obtain bonuses for work she never actually performed, and employer later mailed invoices to third-party administrator for payment).

As the Government's brief states, even if Keller's account was credited immediately upon depositing any given check, if the clearing process ultimately failed, his account would be debited and "the fraud would be for naught." Appellee's Br. at 20. *See United States v. Franks*, 309 F.3d 977, 978 (7th Cir. 2002) (distinguishing *Kann* because it predates the introduction of the Uniform Commercial Code, "which makes it easy for a customer's bank to reverse the credit if the instrument cannot be collected"). The Government presented undisputed evidence connecting the specific checks charged in the indictment to the clearance process. Accordingly, Keller has failed to demonstrate that the District Court erred on this point.

Moreover, we find that the District Court did not abuse its discretion when it

6

refused to give Keller's proposed jury instruction.[4]  We agree with the District Court that Keller's proposed instruction, that the scheme to defraud must have "depended in some way" on the use of the wires, provides no meaningful difference from the instruction the District Court gave that the wires must have been "used in some manner to further" the scheme.  App. at 17 (internal quotations omitted).  The District Court gave, verbatim, the Third Circuit Model Criminal Jury Instruction 6.18.1343-1 for wire fraud, which Keller conceded during the proceedings provided a correct statement of the law.

Finally, given the lack of a record quantifying the value of unpaid legal services provided by Keller to Slavinsky after the sale, if any, it was not error for the District Court to assign nothing for the loss reduction for services.[5]  The loss need not be determined with precision and the District Court need only make a reasonable estimate of the loss.  *United States v. Coyle*, 63 F.3d 1239, 1251 (3d Cir. 1995) (internal citations

---

[4] We review the District Court's decision regarding jury instructions for abuse of discretion and "will order a new trial on account of a district court's refusal to give a proposed jury instruction 'only when the requested instruction was correct, not substantially covered by the instructions given, and was so consequential that the refusal to give the instruction was prejudicial to the defendant.'" *United States v. Hoffecker*, 530 F.3d 137, 167 (3d Cir. 2008) (internal citations omitted).

[5] We review factual findings, such as the amount of loss, for clear error.  *United States v. Napier*, 273 F.3d 276, 278 (3d Cir. 2001).

and quotations omitted).[6]

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[6] Keller's additional argument is without merit. The District Court did not err by considering loss from uncharged and acquitted conduct. *See, e.g., United States v. Rudolph*, 137 F.3d 173, 177 (3d Cir. 1998) (uncharged conduct may form the basis for upward or downward sentencing adjustments); *United States v. Jimenez*, 513 F.3d 62, 88 (3d Cir. 2008) (district court can consider acquitted conduct when establishing a sentence).