**UNITED STATES of America, Appellee,**

v.

**Charles W. TACKETT, Appellant.**

**No. 80-2030.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1981.
Decided April 15, 1981.

**1242**

Claude Hanks, Creve Coeur, Mo., for appellant; Jack J. Gilbert, St. Louis, Mo., on brief.

Robert D. Kingsland, U. S. Atty., Timothy J. Wilson, Asst. U. S. Atty. (argued), St. Louis, Mo., for appellee.

Before HEANEY, HENLEY and McMILLIAN, Circuit Judges.

HEANEY, Circuit Judge.

Defendant Charles Tackett was convicted of one count of wire fraud in violation of 18 U.S.C. § 1343 and two counts of mail fraud in violation of 18 U.S.C. § 1341. He was sentenced to three years imprisonment on each count, the sentences to run concurrently. Upon a careful review of the record and the briefs of the parties, we conclude that the evidence is sufficient to sustain the convictions on Counts I and II of the indictment. We reverse, however, the conviction based on Count III.

The defendant does not seriously dispute the facts as set out in the indictment. He contends, however, that the evidence presented failed as a matter of law to establish a fraudulent use of the mails or wires under sections 1341 and 1343.

Tackett was charged with perpetrating two land fraud schemes in the St. Charles, Missouri, area from September, 1979, through May, 1980. During that time, Tackett rented property across the street from a large shopping center that was being developed. On September 24, 1979, Tackett told Pat Manning that he had an option to purchase the property he was renting, and that $25,000 was being held in escrow by the owners to secure the option. That same day, Manning agreed to loan money to Tackett in exchange for an assignment to him of the option; he gave Tackett a check for $7,500. Manning later sold a one-half interest in the option to Donald Rosenfeld.

Count I of the indictment, the wire fraud count, is based on a long-distance telephone conversation that Tackett had with Manning on October 10, 1979. At that time, Tackett reassured Manning that the option to purchase the property did exist and that documents evidencing the option would be provided. Eleven days later, Manning and Rosenfeld each gave Tackett $250.

■ The evidence is clearly sufficient to sustain the defendant's conviction on Count I. There are two grounds on which the jury could find that the long-distance phone call was sufficiently closely related to the land fraud scheme to bring Tackett's conduct within the wire fraud statute. See *United States v. Maze*, 414 U.S. 395, 399, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974). First, the jury could reasonably have concluded that the fraudulent scheme had not reached fruition before the October 10th telephone call. If this were true, Tackett was plainly acting in furtherance of his scheme when he reassured Manning that the option contract was legitimate. The $500 payment Tackett received on October 21st is evidence that the scheme was not complete on September 24, the time of the $7,500 loan. Manning testified that he and Rosenfeld gave Tackett the additional $500 because "we wanted to make sure that we solidified the deal." According to Tackett's testimony, he understood that the money was "to make the contract binding." Even if Tackett's assertion is true that the $250 checks were "voluntary," "unanticipated payments, not induced by defendant," he willingly accepted the money; he was still receiving the benefits of his fraudulent scheme.

■ Further, there is evidence that the scheme was operating beyond October 21st, when the $500 was paid. Manning testified that in late November or early December, Tackett told Manning and Rosenfeld that he needed an $11,000 loan to avoid an IRS lien on the funds held in escrow securing the option. Tackett did not obtain the addi-

tional "loan." However, a scheme to defraud does not have to be successfully completed for there to be a violation of the wire fraud statute. *Weisser v. Ciccone*, 532 F.2d 101, 105 n.6 (8th Cir. 1976); *United States v. Gross*, 416 F.2d 1205, 1209–1210 (8th Cir. 1969), *cert. denied*, 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970). It is enough that Tackett was still trying to take advantage of his victims' belief that a valid option contract existed.

■ Second, the jury could reasonably have concluded that even if the fraud was executed on September 24, 1979, the October 10th telephone call was "in furtherance of the scheme." Mailings which are designed to lull victims into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect are mailings in furtherance of the fraudulent scheme under the mail fraud statute. *United States v. Maze, supra*, 414 U.S. at 403, 94 S.Ct. at 650; *United States v. Sampson*, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962); *United States v. Toney*, 598 F.2d 1349, 1353 (5th Cir. 1979), *cert. denied*, 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *United States v. Porter*, 441 F.2d 1204, 1211–1212 (8th Cir. 1971). This rule has recently been applied under the wire fraud statute. *See United States v. Wolfson*, 634 F.2d 1217 (9th Cir. 1980); *United States v. Wrehe*, 628 F.2d 1079 (8th Cir. 1980). Tackett's efforts to assure Manning that a legitimate option contract existed would clearly serve a "lulling" function if, indeed, he had already achieved his fraudulent ends.

Count II of the indictment presents a somewhat more difficult question. This mail fraud count also arose from the scheme to defraud Patrick Manning and Donald Rosenfeld described in Count I.

On December 8, 1979, Manning and Rosenfeld contacted the owners of the property that Tackett was renting. This inquiry was prompted by Tackett's request for an additional $11,000 loan to avoid an IRS lien on the funds held in escrow to secure the option contract. The owners denied the existence of any option to buy their property. Tackett then met with Rosenfeld, Manning and their attorney, Michael McKitrick, assuring them that the option was genuine and that there was escrow money securing it. McKitrick contacted Tackett by telephone a couple weeks later and told him that because the owners had denied the existence of the option, he would have to sign an affidavit reflecting the representations he had made regarding the land deal. They set up a meeting for this purpose. Tackett then phoned McKitrick to say that he could not attend the meeting but to "go ahead and send the affidavit." On February 22, 1980, McKitrick sent the affidavit to Tackett. This mailing constitutes Count II.

■ After a careful review of the record, we conclude that the evidence, viewed in the light most favorable to the jury's verdict,[1] is sufficient to sustain the defendant's conviction on Count II. As we have noted, mailings which are designed to lull victims into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect are mailings in furtherance of the fraudulent scheme. The letter from McKitrick is best characterized as such a "lulling" letter.[2] Even if we assume that Tackett did not intend to get any more money from Rosenfeld and Manning at this point, the letter was still mailed for the purpose of executing the fraud. *United States v. Sampson, supra*, 371 U.S. at 80–81, 83 S.Ct. at 175–176. Tackett was clearly trying to "buy time" to allay McKitrick's suspicions for awhile by agreeing to put his representations in writing.

The significant factor here is that the affidavit was mailed to Tackett *at his direction* in order to prolong the life of his scheme, or at least to delay discovery of the

---

1. *See United States v. Cooper*, 596 F.2d 327, 329 (8th Cir. 1979).

2. It is, of course, not necessary that the defendant himself use the mails. Under the terms of the statute, it is sufficient that he "caused" the mailing to occur. *United States v. Calvert*, 523 F.2d 895, 903 (8th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976). Tackett clearly "caused" the mailing in Count II.

fraud. This distinguishes the case at bar from those which have held that unsolicited letters from the victims of a fraud, recounting unkept promises, requesting confirmation of representations made, or threatening legal action are not "in furtherance of the scheme to defraud." *See United States v. Georgalis*, 631 F.2d 1199 (5th Cir. 1980); *United States v. Kaplan*, 554 F.2d 958 (9th Cir. 1977); *United States v. LaFerriere*, 546 F.2d 182, 185 (5th Cir. 1977).

Count III, however, clearly cannot be sustained. This count arose from the second of Tackett's land-fraud schemes. In January, 1980, Tackett told Richard Meyer, a business associate, that he knew of an elderly woman who wished to sell 1.5 acres of land strategically located near the developing shopping center. He stated further that he had spoken with the woman about obtaining an option on the property but that he, Tackett, had most of his money tied·up in other investments. None of these representations were true. Meyer agreed to form a partnership to purchase the property with Tackett. He gave Tackett $500 on January 25, 1980, and $2,000 on February 4, 1980, as part of the earnest money to be paid for the property.

The correspondence which forms the basis for this mail fraud count was a partnership agreement concerning the property mailed by Meyer's attorney to Meyer on February 28, 1980. One month later, Meyer presented the agreement to Tackett for his signature.

Even when viewed in a light most favorable to the jury's verdict, the evidence on Count III is not sufficient to establish a violation of the mail fraud statute. As noted previously, the mailing at issue must be sufficiently closely related to the defendant's scheme to bring it within the mail fraud statute. *United States v. Maze, supra*, 414 U.S. at 399, 94 S.Ct. at 648. The statute does not reach all mailings resulting from a fraudulent scheme, but only those which are in furtherance of the scheme. *Id.* at 405, 94 S.Ct. at 651; *United States v. LaFerriere, supra*, 546 F.2d at 185–187. It cannot be said that Tackett mailed, or

caused the partnership agreement to be mailed, for the purpose of executing his scheme. The mailing of the partnership agreement to Meyer had absolutely no effect on the success or failure of the fraudulent scheme. Although the partnership agreement called for further payments by Meyer to secure the property, in fact Tackett received no more than the $2,500 paid as of February 4, 1980. He made no further efforts to contact Meyer after that date. Meyer did locate Tackett on March 28, 1980, to present the partnership agreement, which was never signed, and again in June, 1980, after he began to suspect that he had been defrauded. However, it is clear that Tackett had finished milking Meyer as of February 4, 1980; his scheme had reached fruition. There is no indication that he desired any further contact with his victim, either to procure more money or to reassure him that the deal was legitimate. The after-the-fact, unsolicited, incidental mailing at issue cannot sustain defendant's conviction on Count III.

The defendant's conviction on Counts I and II of the indictment is affirmed; we reverse the conviction on Count III.