**UNITED STATES of America, Appellee,**

v.

**Vivian K. LEYDEN, Appellant.**

**No. 87–1669.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 16, 1987.

Decided March 28, 1988.

---

Jerold V. Fennell, Omaha, Neb., for appellant.

Robert F. Kokrda, Omaha, Neb., for appellee.

Before LAY, Chief Judge, and HEANEY and MAGILL, Circuit Judges.

LAY, Chief Judge.

In a nonjury trial, Vivian Leyden was convicted of one count of mail fraud; Leyden allegedly burnt down her home to collect on her home insurance policy with MFA Mutual Insurance Company ("MFA").[1] To establish use of the mails, the government relied upon MFA's answer to Leyden's amended petition requesting that MFA be compelled to pay her insurance claim. In this appeal Leyden maintains that MFA's responsive pleading was not "for the purpose of executing such scheme" and cannot serve as the basis of a prosecution under the mail fraud statute, 18 U.S.C. § 1341 (1982). We must agree. We reverse and remand the case with directions to dismiss.

The fire occurred on September 23, 1979. Leyden then proceeded to file an insurance claim with MFA. After MFA denied coverage, Leyden filed suit in the Nebraska state court. In response to Leyden's amended petition, MFA filed an answer denying coverage on the theory that Leyden was guilty of making material misrepresentations to MFA. Although MFA's counsel believed the fire to be the result of arson, MFA eventually paid $180,000 in settlement in May of 1982.

---

1. Leyden was sentenced to three years imprisonment, fined $1,000, and ordered to make restitution of $180,000.

The United States then indicted Leyden under section 1341 because the mails were used to collect on her insurance policy. Rather than rely upon proof of mailing of the settlement money or similar papers, however, the United States sought to establish mail fraud relying only upon MFA's answer to Leyden's amended state court petition. The district court[2] found the mailing sufficient on the theory that it helped frame the legal issue. We reverse.

■ To establish mail fraud, the United States need demonstrate only that: (1) there was a plan or scheme to defraud; (2) it was foreseeable that the defendant's scheme would cause the mails to be used;[3] and (3) the use of the mails was "for the purpose" of carrying out the fraudulent scheme.

■ The defendant primarily challenges the government's proof that MFA's responsive pleading was in furtherance of the scheme to commit arson. We think the government's assertion stretches the mail fraud statute beyond its intended use. For purposes of establishing mail fraud, a mailing may be a "routine" mailing or even one that is sent for a "legitimate business purpose" so long as it assists the criminal in carrying out the fraud. *United States v. Freitag*, 768 F.2d 240, 244 (8th Cir.1985). The writing relied upon may have occurred after the fraud is accomplished if the writing has the effect of delaying discovery of the fraud. *United States v. Massa*, 740 F.2d 629, 646 (8th Cir.1984), *cert. denied*, 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); *United States v. Tackett*, 646 F.2d 1240, 1243 (8th Cir.1981). No matter how innocent the writing may be, however, the mail fraud statute states explicitly that the mailing must be for the purpose of executing the scheme or artifice. *McNally v. United States*, ___ U.S. ___, 107 S.Ct. 2875,

2881, 97 L.Ed.2d 292 (1987). As Chief Justice Rehnquist has observed, the mail fraud statute is limited in its grasp: "Congress could have drafted the mail fraud statute so as to require only that the mails be in fact used as a result of the fraudulent scheme. But it did not do this; instead, it required that the use of the mails be 'for the purpose of executing such scheme or artifice * * *.'" *United States v. Maze*, 414 U.S. 395, 405, 94 S.Ct. 645, 651, 38 L.Ed.2d 603 (1974) (footnotes omitted); *see also Kann v. United States*, 323 U.S. 88, 95, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944) ("The federal mail statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law."); *United States v. Taylor*, 789 F.2d 618, 622 (8th Cir.1986); *Freitag*, 768 F.2d at 244; *United States v. Cooper*, 596 F.2d 327, 330 (8th Cir.1979).

■ Of course, a mailing can be removed from the center of the fraudulent action and yet sufficient for purposes of applying section 1341. *United States v. Waterman*, 704 F.2d 1014, 1019 (8th Cir.), *rehg. denied*, 716 F.2d 482 (8th Cir.1983). But this does not alter the fact that the mail fraud act does not cover all frauds involving use of the mails. *Maze*, 414 U.S. at 405, 94 S.Ct. at 651; *Tackett*, 646 F.2d at 1244. Rather, the act addresses only those frauds in which the mailing actually furthers the fraud. We recognize that the mailing may be of only tangential importance to the scheme, and that the scheme may well have been successful without the use of the mails, but a mailing that opposes the scheme is inadequate because it is not *for the purpose* of executing the scheme. *United States v. Castile*, 795 F.2d 1273, 1278 (6th Cir.1986); *Spiegel v. Cont. Ill. Nat'l Bank*, 790 F.2d 638, 649 (7th Cir.), *cert. denied*, ___ U.S. ___, 107 S.Ct. 579,

---

**2.** The Honorable Lyle E. Strom, Chief United States District Judge for the District of Nebraska.

**3.** The defendant need not personally use the mails, rather it is sufficient that the use of the mails by others was foreseeable. *United States v. Massa*, 740 F.2d 629, 642 n. 7 (8th Cir.1984) ("it is enough that the use of the mails could reasonably be foreseen"), *cert. denied*, 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985);

*United States v. Waterman*, 704 F.2d 1014, 1019 (8th Cir.), *reh'g denied*, 716 F.2d 482 (8th Cir. 1983). Whether the mailing was foreseeable addresses only whether the defendant caused the mailing, not whether the mailing was for the purpose of executing the scheme. Thus, while a mailing may be foreseeable it does not necessarily further the scheme. *United States v. Castile*, 795 F.2d 1273, 1279 (6th Cir.1986).

93 L.Ed.2d 582 (1986); *Cooper*, 596 F.2d at 330.

■ In the instant case, the proof of mailing relied upon by the United States consists of MFA's pleading denying coverage and alleging material misrepresentation by Leyden. Legal pleadings have been recognized to further the scheme in cases where the mailings delayed discovery of the fraudulent plan [4] or were in direct furtherance of the scheme. *See, e.g., United States v. Peters*, 732 F.2d 1004, 1006 (1st Cir.1984) (fraudulent interrogatory answers filed by counsel). MFA's mailing, however, stated that Leyden had made material misrepresentations in her insurance claim. It is not claimed that the mailing delayed discovery of the fraud, and MFA concedes that the legal proceedings did not alter its suspicion that Leyden had committed arson. Rather, the district court allowed MFA's answer to serve as a basis for mail fraud on the theory that the mailing furthered the fraud by framing the legal issue. While MFA's responsive pleading may have helped to refine the legal issue, we note that the pleading also asserted bluntly that Leyden lied on her insurance application.

Several circuits have considered the government's reliance in a mail fraud prosecution upon the mailing of legal papers that oppose a scheme to defraud. In *United States v. LaFerriere*, 546 F.2d 182 (5th Cir.1977), for example, the defendants created a sham corporation that purported to be in the mortgage commitment business. In fact, many of the company's assets were worthless, and the monies that were intended to be held in escrow were disbursed among the defendants. LaFerriere was convicted of one count of mail fraud. The mailing in *LaFerriere* was a letter by a defrauded party threatening suit unless the defendant supplied proof that the escrowed money was indeed still in escrow. The government claimed that this mailing served to lull the victims into a false sense of security. *LaFerriere*, 546 F.2d at 185.

The Fifth Circuit held, however, that the mailing was required to be closely related to the scheme. That is, the mailing did not have to be closely related in time or space but in "the dependence in some way of the completion of the scheme or the prevention of its detection on the mailings in question." *LaFerriere*, 546 F.2d at 187. LaFerriere's conviction was reversed because the only likely effect of the letter "would be to further detection of the fraud or to deter its continuation." *Id.* The facts in *LaFerriere* are a close parallel to those in the instant case because MFA's answer, like the letter in *LaFerriere*, directly opposed the defendant's scheme.

In *United States v. Otto*, 742 F.2d 104 (3rd Cir.1984), *cert. denied*, 469 U.S. 1196, 105 S.Ct. 978, 83 L.Ed.2d 980 (1985), the defendant induced others to entrust him with money that he was supposed to invest in stock futures. Otto did not invest in futures but rather used much of the money to pay off other creditors and investors. One of the mailings the government used to establish mail fraud was a creditor's letter demanding payment. Because the letter was uninvited by Otto's actions, and posed a threat to Otto's scheme, the court held it could not serve as the basis for a conviction of mail fraud. The Third Circuit found that the only effect of the letter "would be to further detection of the fraud or deter its continuation." *Otto*, 742 F.2d at 109 (quoting *LaFerriere*, 546 F.2d at 187).

In *United States v. Staszcuk*, 502 F.2d 875 (7th Cir.1974), the defendant was a city alderman. A party seeking a zoning variance offered to pay $9,000 for Staszcuk's agreement not to oppose its application. The court of appeals sustained Staszcuk's conviction of extortion but struck down the conviction for mail fraud based upon the mailing of notice of a public hearing on the zoning variance. The public hearing was convened to consider the zoning application, and the mailing served only to warn local landholders that their interests might

---

**4.** *See Porcaro v. United States*, 789 F.2d 73 (1st Cir.1986); *United States v. Otto*, 742 F.2d 104 (3rd Cir.1984), *cert. denied*, 469 U.S. 1196, 105

S.Ct. 978, 83 L.Ed.2d 980 (1985); *United States v. Toney*, 598 F.2d 1349 (5th Cir.1979); *United States v. LaFerriere*, 546 F.2d 182 (5th Cir.1977).

be adversely affected. These mailings did not lull the victims nor did they further the crime; accordingly, they could not be the basis of a conviction for mail fraud.

As a general rule, then, it is well recognized that mailings that serve to put the defrauded party on notice, or make the execution of the fraud less likely, are not covered under section 1341. *Spiegel,* 790 F.2d at 649. In *Spiegel,* Continental Illinois National Bank (Continental) served as a trustee for the trust's income beneficiary, Spiegel. When Spiegel himself became a trustee along with Continental, Spiegel wanted to remove Continental as trustee. Continental resisted and ultimately prevailed but Spiegel brought a claim against Continental alleging a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982). When Spiegel then sought to replace Continental with another bank that would serve as trustee, Continental notified Spiegel that it would withhold $40,409.31 in attorney's fees due to the litigation between them. Spiegel relied upon the notice as one of Continental's criminal acts. The court concluded, however, that a letter alerting the plaintiff cannot be in furtherance of a fraudulent scheme. *Spiegel,* 790 F.2d at 644. In the instant case, the action is even further removed because not only was the letter from the defrauded party, but the mailing used by MFA clearly indicated that Leyden was committing fraud.

Beyond those cases that deal with the mailing of legal pleadings or complaints by defrauded customers, the courts have similarly held that other mailings that oppose the scheme will not serve for purposes of section 1341. In *United States v. Bonansinga,* 773 F.2d 166, 172 (7th Cir.1985), *cert. denied,* 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986), for example, the Seventh Circuit held that a mailing serving to disclose the fraud would not suffice for purposes of invoking section 1341. In *Bonansinga* a town councilman converted to his own use some automobile parts that were town property. The mailing relied upon by the United States to establish mail fraud was the invoice sent to the town from the automobile parts supplier. The mailing did not serve to conceal the fraud, but, rather, placed the town on notice that it had been sent automobile parts. Accordingly, the conviction on that count was reversed because the mailing was not for the purpose of executing the scheme. *Bonansinga,* 773 F.2d at 172.

In a case that has close factual parallels to the instant case, the Sixth Circuit held that an insurance company's investigative letters, which indicate a suspicion of arson, will not serve for purposes of section 1341. *United States v. Castile,* 795 F.2d at 1278. In *Castile,* the defendant Castile was convicted of committing arson to collect on the insurance. The mailings relied upon by the United States to establish mail fraud were investigative letters used to determine whether arson had been committed. The Sixth Circuit held that the mailings were insufficient because "where the purpose of a mailing conflicts with, rather than promotes, the scheme to defraud, the mailing will not support a conviction under the mail fraud statute." *Id.* Even though it was foreseeable that these notices would be sent, the mailings did not further the scheme. *Id.* at 1279. The Sixth Circuit clearly distinguished between *foreseeability,* which addresses whether the defendant caused the mailing, and the *in furtherance* requirement, which addresses whether the mailing was "for the purpose" of executing the scheme. Similarly, in the instant case it may have been foreseeable that MFA would respond to Leyden's complaint but this does not imply that MFA's response was "for the purpose" of executing the scheme. It was not. MFA's pleading opposed, rather than promoted, the scheme and thus fell outside of the in furtherance requirement.

The judgment of conviction is reversed.