# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2687

_____

United States of America

*Plaintiff - Appellee*

v.

Julia Ngoc Nguyen, also known as Loan Nguyen

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: March 17, 2016
Filed: July 18, 2016
_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

A jury convicted Julia Ngoc Nguyen of multiple offenses relating to immigration fraud and government-benefits fraud. At sentencing, the district court, over Nguyen's objection, applied a two-level sentencing guidelines enhancement based on the number of victims affected by Nguyen's crimes. The court then sentenced Nguyen to a total of 87 months' imprisonment and three years' supervised

release. Nguyen now appeals, raising multiple challenges to her convictions and sentence. We affirm the convictions, except for count 18. We affirm Nguyen's sentence, except that we direct the district court to vacate the $100 special assessment associated with count 18.

I.

After a lengthy investigation by state and federal law enforcement, a federal grand jury indicted Nguyen on twenty-two counts, including attempted naturalization fraud, 18 U.S.C. § 1425(a); theft of government funds, 18 U.S.C. § 641; social-security fraud, 42 U.S.C. § 1383a(a)(3); false use of a social security number, 42 U.S.C. § 408(a)(7)(B); aggravated identity theft, 18 U.S.C. § 1028A(a)(1); false statements to a government agency, 18 U.S.C. § 1001(a)(1); health-care fraud, 18 U.S.C. § 1347; and mail fraud, 18 U.S.C. § 1341. During the four-day trial, the Government presented the testimony of twenty-four witnesses describing the events that gave rise to these charges.

Regarding the attempted naturalization fraud, the Government called three witnesses. The first, an immigration officer, discussed the process of applying for naturalization in the United States. He informed the jury that a successful applicant must pass an English-proficiency and literacy test and a civics examination addressing the applicant's understanding of United States history and government. He also explained that an applicant is excused from completing these tests if she has a mental or physical disability and if she submits an N-648 form on which a doctor certifies that this condition prevents her from learning or demonstrating language abilities or knowledge of United States history and civics. The Government then called N.B. and T.B., two immigrants to the United States. Both women testified that they paid Nguyen to assist them in obtaining citizenship. N.B. previously failed the English-proficiency and civics tests before she contacted Nguyen. T.B. also struggled with this requirement, and she failed the tests even after consulting with Nguyen.

Unbeknownst to these witnesses, Nguyen convinced a physician, Dr. S., to complete N-648 forms for T.B. and N.B. with falsified medical information, even though neither woman had a qualifying disability that would excuse her from the English-proficiency or civics exams. These falsified N-648 forms were then submitted on T.B.'s and N.B.'s behalf and filed with their applications for naturalization.

To prove the theft-of-government-funds and social-security-fraud counts, the Government focused on Nguyen's unlawful receipt of Social Security Income ("SSI"). The Government presented evidence of bank records and testimony from bankers and special agents to show that Nguyen received SSI payments intended for herself and three different individuals—Q.N., C.P., and T.N.—from approximately 2007 through 2014. All of these payments either were mailed to a post-office box associated with Nguyen or directly deposited into a bank account controlled by Nguyen. Special agents from the Department of Homeland Security and the Social Security Administration ("SSA") testified that C.P. and Q.N. were not present in the United States during much of the time the government paid benefits intended for them. Indeed, Q.N. permanently departed the country in December 2008 on a commercial airplane on which Nguyen also was a passenger. T.N. also left the country for more than thirty days on multiple occasions without notifying the SSA, and the government thus incorrectly continued to issue benefits to her. In total, Nguyen received $33,350.00 of SSI benefits intended for Q.N., $7,115.60 of SSI benefits intended for C.P., and $33,052.00 of SSI benefits intended for T.N.

As the recipient of these three income streams, Nguyen was required to report the additional income to the SSA to determine her eligibility for SSI. A claims representative from the SSA testified that Nguyen reported no income when she initially applied for SSI benefits and again when she completed the benefit-renewal statement. In addition, SSA special agents testified that Nguyen submitted a written statement that contained an admission that she knew she was receiving benefits illegally.

With respect to the counts of false statements to a government agency, the Government presented evidence that, from 2010 through 2012, Nguyen received subsidized housing from the United States Department of Housing and Urban Development ("HUD"); however, she failed to disclose her actual income, including the SSI payments intended for Q.N., C.P., and T.N. Regarding the counts for false use of a social security number and aggravated identity theft, a witness from the Iowa Department of Revenue testified that, from 2011 through 2012, after Q.N. had left the United States permanently, someone fraudulently used Q.N.'s social security number and name to apply for and receive two $999 payments from the Iowa Rental Reimbursement Program. These payments were delivered to an address in Des Moines. Nguyen admitted to SSA agents that she filled out the application on Q.N.'s behalf and that she "got [Q.N.'s] check." Similar rebate payments for T.N. and C.P. were delivered to Nguyen's post-office box and deposited in Nguyen's account while the intended recipients were out of the country.

The Government also presented evidence that Nguyen fraudulently obtained payments for health-care services from the Consumer-Directed Attendant Care ("CDAC") program administered by the state of Iowa. A CDAC income-management specialist testified that a benefits applicant must submit a doctor-certified Medicaid level-of-care form indicating that the applicant has a qualifying medical condition. If the applicant qualifies, Iowa Medicaid funds the cost of her care. Witnesses testified that Nguyen submitted a form on which she falsely claimed that she used a cane and required assistance for tasks such as bathing and dressing. As a result of these misrepresentations, Nguyen received CDAC benefits from July 2012 until March 2013.

Finally, the Government addressed the mail-fraud counts by examining the mailings that had been sent to Nguyen's post-office box regarding Q.N.'s food-assistance benefits. Because neither Q.N. nor Nguyen reported Q.N.'s permanent departure from the United States, food-assistance benefits, in the form of an

electronic benefits card ("EBT"), continued to be mailed to the post-office box controlled by Nguyen. From 2009 through 2013, the Iowa Department of Human Services mailed several decision notices and two replacement EBT cards, all of which were intended for Q.N., to Nguyen's post-office box. The Government also presented video footage from a local Walmart showing that a woman matching Nguyen's description used these benefits to make purchases while Q.N. was in Vietnam.

At the close of evidence, Nguyen moved for judgment of acquittal on all counts. The district court denied the motion. Nguyen also objected to the jury instructions for the attempted naturalization-fraud counts. She maintained that the court should have instructed the jury that the Government had to prove that N.B. and T.B., the applicants, were ineligible for naturalization. Nguyen also objected to the instruction's definition of "material" as it related to the counts of attempted naturalization fraud. The district court overruled both objections. Ultimately, the jury convicted Nguyen on all counts. After the trial, Nguyen renewed her motion for judgment of acquittal, which the district court denied.

At sentencing, the district court, over Nguyen's objection, applied a two-level sentencing guidelines enhancement because Nguyen's fraud offenses involved ten or more victims. The district court sentenced Nguyen to concurrent terms of 63 months' imprisonment for the naturalization-fraud, theft-of-government-funds, health-care-fraud, and mail-fraud counts. The court also imposed a term of 60 months' imprisonment, to run concurrently with the first 63-month sentence, for the counts related to social-security fraud, false use of a social security number, and false statements to a government agency. Finally, the court imposed a consecutive sentence of 24 months' imprisonment for the aggravated identity-theft counts. Together, her sentences amounted to 87 months' imprisonment, plus three years of supervised release. This sentence fell at the bottom of her advisory guidelines range of 87-92 months' imprisonment. The court assessed a $100 special assessment for each count.

II.

On appeal, Nguyen raises several challenges. She renews her argument that the district court's jury instructions on the naturalization-fraud charges were improper. She also argues that the court erred by denying her motion for judgment of acquittal on all counts. Third, she contends that the district court improperly applied a two-level sentencing guidelines enhancement because the Government did not show that her conduct affected ten or more victims. Finally, she argues that the court imposed a substantively unreasonable sentence.

A.

Under 18 U.S.C. § 1425(a), "[w]hoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship" has committed naturalization fraud. At trial, the court instructed the jury that the substantive crime of naturalization fraud has four elements: (1) the defendant provided false information in the naturalization process, (2) the false information related to a material matter, (3) the defendant acted knowingly, and (4) naturalization was attempted as a result of the false information. The court then gave instructions to the jury regarding attempt, noting that the jury could convict Nguyen of attempted naturalized fraud "if she knowingly intended to provide false information related to a material matter in the naturalization process and voluntarily and intentionally carried out some act which was a substantial step toward procuring naturalization." Nguyen asserts that the court abused its discretion because it failed to instruct the jury that the Government had to prove that the applicants actually were ineligible for naturalization, and she argues that the women were not ineligible because both later passed the English-proficiency and civics tests. She also contends that the court erred by instructing the jury that whether a misrepresentation is material "does not depend on whether [a] person or agency was actually deceived or misled."

-6-

We review jury instructions for abuse of discretion. *United States v. Farish*, 535 F.3d 815, 821 (8th Cir. 2008). In doing so, "[w]e recognize that district courts are entitled to 'broad discretion in formulating the jury instructions.'" *Id.* (quoting *United States v. Hayes*, 518 F.3d 989, 994 (8th Cir. 2008)). "We review the instructions given as a whole and affirm if they fairly and adequately submitted the issues to the jury." *Id.* (quoting *Hayes*, 518 F.3d at 994).

As authority for her proposed jury instructions, Nguyen relies on *Kungys v. United States*, 485 U.S. 759 (1988), a Supreme Court decision that interpreted the civil denaturalization statute, 8 U.S.C. § 1451(a). This statute provides for the revocation of a citizen's naturalization if the "order and certificate of naturalization" were "illegally procured or were procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). Interpreting this statute, *Kungys* held "that the test of whether [the defendant's] concealments or misrepresentations were material is whether they had a natural tendency to influence the decisions of the Immigration and Naturalization Service." 485 U.S. at 772. The Court then considered the "procured by" requirement of § 1451(a). The Court clarified that the Government need not prove "but for" causation—that is, the Government need not show that naturalization would have been denied if the misrepresentations or concealments had not occurred. *Id.* at 776-77. However, the Court said that the "procured by" requirement did require the Government to prove more than the mere fact that a misrepresentation had been made. *Id.* at 777. The Court stated that proof of a material misrepresentation creates a rebuttable presumption of ineligibility for citizenship—a presumption that arises whenever "the Government produces evidence sufficient to raise a fair inference that a statutory disqualifying fact actually existed." *Id.* at 783 (Brennan, J., concurring); *see United States v. Puerta*, 982 F.2d 1297, 1304 (9th Cir. 1992) (concluding that this concurrence provides the controlling standard in 18 U.S.C. § 1425(a) prosecutions for unlawful procurement of citizenship). Under this rebuttable-presumption framework, the Government satisfies the "procured by" requirement if it produces evidence making it fair to infer the existence of some

disqualifying fact.  *Kungys*, 485 U.S. at 776-77.  A naturalized citizen may overcome the presumption if he or she shows "through a preponderance of the evidence, that the statutory requirement as to which the misrepresentation *had a natural tendency* to produce a favorable decision was in fact met."  *Id.* at 777; *see also United States v. Pirela Pirela*, 809 F.3d 1195, 1200 (11th Cir. 2015).

Our court has not yet addressed whether *Kungys* dictates what the Government must prove in criminal naturalization-fraud proceedings under § 1425(a).  Although several courts have concluded that *Kungys* applies in criminal prosecutions under § 1425(a), *see, e.g.*, *United States v. Latchin*, 554 F.3d 709, 713 (7th Cir. 2009), at least one court has determined that the elements of the civil and criminal naturalization-fraud statutes are different, *see United States v. Maslenjak*, 821 F.3d 675, 683 (6th Cir. 2016).  Here, we need not answer this unsettled question because even if we accept Nguyen's position and assume that *Kungys* guides the determination of what the Government must prove in a criminal case under § 1425(a), we find that Nguyen's argument lacks merit.

Regarding the materiality issue, the district court instructed the jury that the Government had to prove that Nguyen presented "false information related to a material matter in the naturalization process."  The court then instructed the jury that a statement or representation is "material" if it "has a natural tendency to influence, or is capable of influencing, the decision of a reasonable person in deciding whether to engage in a particular transaction."  This language tracks closely with the language used by the Supreme Court when describing the materiality requirement in *Kungys*. 485 U.S. at 770.  There, the Court stated that "a misrepresentation is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of' the decisionmaking body to which it was addressed," *i.e.*, the agency determining whether an individual qualifies for naturalization.  *Id.* at 770-71.  Contrary to Nguyen's argument, *Kungys* set forth no requirement that the Government prove that an agency actually be deceived or misled.  Indeed, the Court stated:  "It has never

been the test of materiality that the misrepresentation or concealment would *more likely than not* have produced an erroneous decision, or even that it would *more likely than not* have triggered an investigation." *Id.* at 771.[1] Accordingly, assuming *Kungys* applies, we conclude that the court's instruction fairly and adequately submitted the "materiality" issue to the jury.

We find equally unavailing Nguyen's argument that the court's instructions did not adequately explain the "procured by" requirement outlined in *Kungys*. By arguing that the Government had to present evidence showing T.B. and N.B. were ineligible for citizenship, Nguyen overlooks a significant difference between *Kungys* and the present offense. *Kungys* examined a civil denaturalization statute applicable only after an applicant actually obtained naturalization. In contrast, the criminal statute at issue in Nguyen's proceeding applies not only when the applicant actually obtains naturalization but also when she attempts to do so. In attempt cases, a defendant may be convicted regardless of whether the attempt is successful. *See United States v. Bauer*, 626 F.3d 1004, 1007 (8th Cir. 2010) ("[A] defendant's success in attaining his criminal objective is not necessary for an attempt conviction."). Thus, the fact that T.B. and N.B. possibly could have passed the tests and procured naturalization without the material misrepresentation is no more relevant to the attempt charge or conviction than the fact that Nguyen ultimately was unsuccessful in procuring naturalization for these women. *See United States v.*

_____

[1]When discussing the "materiality" requirement of the civil denaturalization statute in *Kungys*, the Supreme Court explained that the term has the same meaning as "materiality" under 18 U.S.C. § 1001. *Kungys*, 485 U.S. at 770 ("While we have before us here a statute revoking citizenship rather than imposing criminal fine or imprisonment, neither the evident objective sought to be achieved by the materiality requirement, nor the gravity of the consequences that follow from its being met, is so different as to justify adoption of a different standard."). In interpreting materiality under § 1001, our court previously has applied a consistent definition, noting that materiality "does not require proof that the government actually relied on the statement." *United States v. Mitchell*, 388 F.3d 1139, 1143 (8th Cir. 2004).

*Rehak*, 589 F.3d 965, 971 (8th Cir. 2009) (noting that factual impossibility is not a defense to inchoate offenses such as attempt). When an individual is charged with attempt, it is enough for the Government to show: (1) the defendant intended to commit the substantive offense, and (2) the defendant took a substantial step toward doing so. *See United States v. Young*, 613 F.3d 735, 742 (8th Cir. 2010) (defining the elements of attempt). And here, the instructions described these requirements clearly. The court instructed the jury that the charge of attempted naturalization fraud required the Government to prove that Nguyen "knowingly intended to provide false information related to a material matter in the naturalization process and voluntarily and intentionally carried out some act which was a substantial step toward procuring naturalization." The court likewise instructed the jury that the underlying substantive offense required the Government to prove more than just the fact that naturalization was attempted; indeed, the court stated that the Government had to prove that "naturalization was attempted *as a result of* the false information." We conclude that the instructions adequately reflect *Kungys*'s treatment of the "procured by" requirement as it applies to the crime of attempted naturalization fraud. Assuming *Kungys* applies, we find that the instructions fairly submitted the issue to the jury. We therefore reject Nguyen's arguments related to the jury instructions.

B.

We next consider Nguyen's contention that the evidence was insufficient to support the jury's verdict. "When reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict rendered and accept all reasonable inferences which tend to support the jury verdict." *United States v. Ramirez*, 362 F.3d 521, 524 (8th Cir. 2004). Although "the evidence need not preclude every outcome other than guilty, we consider whether it would be sufficient to convince a reasonable jury beyond a reasonable doubt." *Id.* We will reverse for insufficient evidence only if no reasonable jury "could have found the essential

elements of the crime beyond a reasonable doubt." *United States v. Inman*, 558 F.3d 742, 747 (8th Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

To convict Nguyen on the attempted naturalization-fraud counts, the Government had to prove that Nguyen "knowingly procure[d] or attempt[ed] to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship." 18 U.S.C. § 1425(a). Once again accepting Nguyen's starting premise and assuming that the proof requirements identified by the Supreme Court in *Kungys* apply to criminal proceedings under § 1425(a), we conclude that the Government presented sufficient evidence.

First, the evidence clearly established that Nguyen made misrepresentations in the naturalization-application process and that her misrepresentations were willful. *See United States v. Hirani*, No. 15-1583, 2016 WL 3064743, at *4 (8th Cir. May 31, 2016) (noting that *Kungys* requires the Government to prove these two elements in civil denaturalization proceedings in addition to proving materiality and "procured by" causation). The relevant misrepresentations were the marks on the N-648 forms indicating that T.B. and N.B. suffered from ailments that would excuse them from the English-proficiency and civics exams. These misrepresentations were willful because Nguyen convinced Dr. S. to sign N-648 forms attributing fabricated medical ailments to each woman after Nguyen had been paid to assist them in obtaining naturalization. In addition, the evidence showed that the misrepresentations were material. As the immigration officer explained, the falsified medical information had a natural tendency to influence a naturalization official by leading the official to conclude that N.B. and T.B. should be exempted from the English-proficiency and civics-test requirements. Finally, ample evidence supported the jury's inference that Nguyen attempted to procure naturalization through these misrepresentations because she believed N.B. and T.B. would fail these tests. N.B. failed the tests on her first attempt to obtain citizenship. T.B. failed the civics and English-proficiency tests even after consulting with Nguyen. That Nguyen specifically sought a means to bypass the

-11-

language and civics tests after meeting these women and accepting their payment bolsters the inference that T.B. and N.B., at least in Nguyen's view, lacked the ability to pass the required tests. In order to obtain an exemption for these women, Nguyen concocted a scheme in which she would facilitate the submission of fraudulent N-648 forms. Thus, naturalization was attempted through the misrepresentations. Viewing the evidence in the light most favorable to the verdict, we conclude that a reasonable jury could have found that Nguyen knowingly intended to provide false information related to a material matter in the naturalization process and that she voluntarily and intentionally carried out a substantial step toward procuring naturalization for N.B. and T.B. Therefore, we reject Nguyen's challenge to the attempted naturalization-fraud counts.

We next turn to Nguyen's challenge to her conviction on the counts for false use of a social security number and aggravated identity theft. In order to convict Nguyen on these counts, the Government had to prove that Nguyen (1) for any purpose, (2) with the intent to deceive, (3) represented a particular social security account number—here, a number ending in 3138—to be hers, (4) which representation is false. *See United States v. McKnight*, 17 F.3d 1139, 1143 (8th Cir. 1994). Nguyen contends that the Government's proof failed on the third element because the evidence showed that she never represented that Q.N.'s social security number, the social security number ending in 3138, was assigned to her or was otherwise connected to her name. We find this argument unavailing. The focus of the inquiry is not whether Nguyen stated that the number ending in 3138 was connected to her name. Instead, the focus is whether she falsely represented herself as the person who had been assigned number 3138 for some purpose and with an intent to deceive. *See id.*; *accord United States v. Barel*, 939 F.2d 26, 34 (3d Cir. 1991) (affirming conviction where the defendant used a false name and social security number to open bank accounts); *United States v. Holland*, 880 F.2d 1091, 1095 (9th Cir. 1989) (affirming conviction for use of false social security numbers to obtain illegitimate paychecks); *United States v. Darrell*, 828 F.2d 644, 647-48 (10th

Cir. 1987) (affirming conviction where the defendant used a false name and social security number to obtain a loan and gave police false identification).

Here, the evidence showed that Nguyen used Q.N.'s social security number in order to obtain Iowa rent-reimbursement payments. Indeed, an employee of the Iowa Department of Revenue testified that someone fraudulently used Q.N.'s social security number and name to apply for payments from the Iowa Rental Reimbursement Program after Q.N. had departed the country. These payments were sent to an address in Des Moines belonging to an acquaintance of Nguyen. The jury also heard a recording of Nguyen's interview with SSA agents, in which Nguyen acknowledged that she filled out the application for rent reimbursement using Q.N.'s information and that she "got [Q.N.]'s check."[2] These admissions and the accompanying evidence were sufficient to show that Nguyen falsely represented herself as Q.N., the individual with a social security number ending in 3138, in order to obtain rent-reimbursement benefits.[3]

---

[2]Nguyen contends that the admissions made to the SSA agents were "dubious" because Nguyen lacked counsel during the three-hour interview and because the SSA agent who translated Nguyen's statements was not a certified translator. We reject these contentions in short order. The SSA agents testified that Nguyen made her statements voluntarily, and Nguyen never raised an objection claiming otherwise at trial. Although the translating SSA agent conceded on cross-examination that he was not a certified translator, he also informed the jury that he was a native Vietnamese speaker, that he had no difficulty understanding Nguyen, and that he was confident in his translation. *See United States v. Perez*, 663 F.3d 387, 394 (8th Cir. 2011) (noting that our court will not second-guess a jury's decision to credit a translation where the defendant challenged the translator's linguistic abilities on cross-examination and attempted to demonstrate to the jury why it should have found the translations untrustworthy).

[3]Nguyen's only argument regarding the sufficiency of the evidence for the identity-theft counts is that these convictions required the Government to prove that she committed the crime of false use of a social security number. Because we find that the convictions for false use of a social security number were proper, we necessarily reject this challenge to the identity-theft convictions.

-13-

Nguyen next argues that the evidence was insufficient to support her conviction for fraudulent receipt of health-care benefits. Conviction on these counts required the Government to prove that Nguyen:

> knowingly and willfully executed, or attempted to execute: a scheme or artifice—(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program in connection with the delivery of or payment for health care benefits, items, or services.

*United States v. Refert*, 519 F.3d 752, 758 (8th Cir. 2008) (quoting *United States v. Boesen*, 491 F.3d 852, 856 (8th Cir. 2007)). Nguyen contends that no reasonable jury could have found her guilty on this count because the evidence did not establish that she actually submitted the falsified medical form to Iowa's Department of Human Services in order to obtain CDAC benefits. She further argues that the jury should not have credited statements made by Dr. S., Nguyen's physician, because that physician admitted fraudulently completing the N-648 forms for T.B. and N.B.

We see no reason to reverse Nguyen's conviction on these counts. The evidence at trial allowed the jury to find that Nguyen altered and submitted the medical-certification form to show that she suffered from qualifying disabilities. An Iowa Department of Human Services income-maintenance worker testified that Iowa Medicaid received a level-of-care certification form for Nguyen in April 2012. The witness further testified that the form came to the office from a service worker who would have received it from Nguyen. Nguyen contends that the jury should not have inferred that she falsified the information because the form was signed by Dr. S. However, Dr. S. testified that she never indicated on the form that Nguyen used a cane or required assistance for bathing or dressing. Indeed, Dr. S. stated that someone changed the form after she completed it. Although Nguyen argues that Dr.

-14-

S. was not credible, we are "'obliged to defer to the jury's determination of the credibility of the witnesses,' and [we] 'will not second-guess the jury's credibility determination of the Government's witnesses.'" *United States v. Sturdivant*, 513 F.3d 795, 800 (8th Cir. 2008) (quoting *United States v. Shepard*, 462 F.3d 847, 867 (8th Cir. 2006)). Viewing the evidence in the light most favorable to the verdict, we find that a reasonable jury could have convicted Nguyen on these counts.

We next turn to Nguyen's contention that the evidence was not sufficient to support her convictions for mail fraud on counts 15, 18, 19, 21, and 22. To establish mail fraud, the Government had to prove: "(1) a scheme to defraud by means of material false representations or promises, (2) intent to defraud, (3) reasonable foreseeability that the mail would be used, and (4) that the mail was used in furtherance of some essential step in the scheme." *United States v. Bennett*, 765 F.3d 887, 893 (8th Cir. 2014) (quoting *United States v. Cole*, 721 F.3d 1016, 1021 (8th Cir. 2013)). "[I]t is not necessary to show that the defendant mailed anything himself, it is sufficient to show that he caused the mailing." *United States v. Brickey*, 426 F.2d 680, 684 (8th Cir. 1970). One "causes" the mails to be used where he "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *Pereira v. United States*, 347 U.S. 1, 8-9 (1954).

Nguyen argues that the two mailings underlying counts 18 and 22 were not sent "for the purpose of executing the scheme or artifice." *United States v. Leyden*, 842 F.2d 1026, 1028 (8th Cir. 1988). These mailings include: (1) an April 13, 2012 notification informing Q.N. that his benefits would be canceled and (2) a June 6, 2012 notice stating that Q.N. could not receive new benefits because he already was deemed eligible to receive benefits (a notice that was inconsistent with the April 13 notification of cancellation). Nguyen contends that these mailings cannot support her conviction because they did not "actually further[]" her plan. *Id.* However, the "in furtherance" requirement of the mail-fraud statute does not require that a mailing

itself be inherently criminal or serve some essential role in the underlying scheme. *United States v. Freitag*, 768 F.2d 240, 243 (8th Cir. 1985). Instead, "[m]ailings are considered to be in execution of a fraudulent scheme if they are 'sufficiently closely related,' or 'incident to an essential part of the scheme.'" *United States v. Boyd*, 606 F.2d 792, 794 (8th Cir. 1979) (internal citations omitted).

The "in furtherance" requirement, however, does serve to exclude mailings that actually oppose the scheme, such as mailings that "clearly indicate[] that [the defendant] was committing fraud." *Leyden*, 842 F.2d at 1030. The purpose of such mailings "conflicts with, rather than promotes, the scheme." *Id.* (quoting *United States v. Castile*, 795 F.2d 1273, 1278 (6th Cir. 1986). Such mailings therefore could not have formed "part of the execution of the scheme as conceived by the perpetrator at the time." *Schmuck v. United States*, 489 U.S. 705, 715 (1989). We conclude that the April 13 benefits-cancellation notice underlying count 18 cannot support Nguyen's mail-fraud conviction. This notification stated that the government had learned that Q.N. was out of the country and that, as a result, the government was canceling Q.N.'s food-assistance benefits. The purpose of this mailing directly opposed Nguyen's scheme: it both suggested that the government was growing wise to some fraudulent activity, and it indicated that Nguyen's plan to continue receiving benefits had been foiled. Applying the general rule that such mailings are not covered under § 1341, we find that this notice could not support Nguyen's conviction. *See Leyden*, 842 F.2d at 1027, 1030 (holding that an insurance company's responsive pleading denying coverage and alleging that the insured had made material misrepresentations could not support a mail-fraud conviction for a defendant who had attempted insurance fraud); *Castile*, 795 F.2d at 1278 (holding that an insurance company's investigative letter indicating suspicion of insurance fraud could not support a mail-fraud conviction).

The Government attempts to escape this conclusion by arguing that the cancellation notice actually "enabled [Nguyen] to take whatever actions she deemed

necessary to try and get the benefits restored, to try and avoid detection as the culprit, or both." We conclude that this is not enough to satisfy the "in furtherance" requirement. Were it sufficient, the "in furtherance" requirement would lose meaning: even those documents directly opposing the scheme would suffice to support conviction because they inform the fraudster of the need to pursue a new scheme. This outcome runs contrary to the Supreme Court's guidance in *Schmuck* that "[t]he relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time, regardless of whether the mailing later, through hindsight," may prove to have a different effect. 489 U.S. at 715. Accordingly, we hold that the district court erred when it found that the April 13 mailing supported a mail-fraud conviction. However, because the sentence for this conviction ran fully concurrently with Nguyen's 63-month sentence on multiple properly obtained counts of conviction—including seven other mail-fraud counts—we do not disturb the prison sentence. *See United States v. Grimes*, 702 F.3d 460, 469 (8th Cir. 2012) (finding that a remand for resentencing was unnecessary because the district court had imposed concurrent sentences for five vacated convictions and one affirmed conviction); *United States v. Easom*, 569 F.2d 457, 459 (8th Cir. 1978) (finding resentencing unnecessary after vacating one conviction because the defendant was properly convicted of another, similar offense, and his sentences for the valid and invalid convictions ran concurrently); *accord United States v. Hall*, 613 F.3d 249, 257 (D.C. Cir. 2010); *United States v. Hernandez*, 730 F.2d 895, 899 (2d Cir. 1984). We remand to the district court with instructions to vacate the conviction on count 18 and the special assessment of $100 associated with it.[4]

Judged under the same "in furtherance" standard, the June 6 mailing underlying count 22 supports conviction. Although this mailing purported to deny *new* benefits,

---

[4]At oral argument, Nguyen's counsel conceded that resentencing was unnecessary because this limited remand was the proper remedy.

it did not conflict with Nguyen's overall scheme to obtain benefits using Q.N.'s identity. The mailing contradicted the April 13 notice and informed Nguyen that the state never actually canceled Q.N.'s food assistance and that Nguyen needed to take no action in order to continue receiving benefits. Because this mailing reassured Nguyen that her scheme was working, the June 6 notice was incident to Nguyen's scheme to defraud the government. *See Boyd*, 606 F.2d at 794; *Freitag*, 768 F.2d at 243-44 (evidence was sufficient to support mail-fraud conviction for check-kiting scheme where bank statements routinely sent by mail allowed the defendants "to know and keep track of the accounting balances in each account"). Consistent with this notice, Nguyen received EBT cards intended for Q.N. after June 6. We thus find that the "in furtherance" requirement poses no barrier to Nguyen's conviction on count 22 because the mailing did not oppose the scheme.

We next turn to Nguyen's challenges rooted in the foreseeability element of mail fraud. Nguyen contends that three mailings were not foreseeable and therefore could not support mail-fraud convictions: (1) an automatically generated letter from the Department of Human Services informing Q.N. of a change in the law (count 15); (2) an EBT card sent on July 1, 2012, after Q.N.'s benefits allegedly had been canceled (count 21); and (3) a second EBT card sent on January 9, 2013, again after Q.N.'s benefits allegedly had been canceled (count 19). In mail-fraud offenses, mailings are foreseeable as long as the defendant causes the mailings—*i.e.*, the defendant "does an act with knowledge that use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *United States v. Fuel*, 583 F.2d 978, 983 (8th Cir. 1978) (quoting *Pereira*, 347 U.S. at 8-9).

Under this standard, the automatically generated mailing underlying count 15 was foreseeable. The evidence supported the conclusion that Nguyen caused the state to send her Q.N.'s benefits. Routine mailings, such as the letter updating Nguyen regarding Q.N.'s benefit status, would be expected to follow in the ordinary course

-18-

of delivering these benefits. The two mailed EBT cards, underlying counts 19 and 21, likewise were foreseeable. Nguyen argues that she could not foresee these mailings because the April 13 notification stated that Q.N.'s benefits would be canceled. However, after Nguyen received the June 6 notice informing Nguyen that Q.N.'s benefits never were canceled, she reasonably could have foreseen that the Government once again would use the mail to deliver Q.N.'s benefits. The EBT cards underlying counts 19 and 21 arrived *after* this June 6 notice. Therefore, her foreseeability argument fails.

Finally, we address Nguyen's argument that the court should have granted her motion for judgment of acquittal on all remaining counts, including the remaining mail-fraud counts and the counts of theft of federal government funds, social-security fraud, and false statements to HUD. Nguyen contends that her conviction on these counts required proof of her connection to post-office box 8015. And she argues that the Government never proved that she exercised sole control over this box, thus rendering it possible that someone else was responsible for the criminal acts.

We conclude that the evidence sufficiently established Nguyen's connection to this post-office box. A post-office employee testified that Nguyen's husband initially applied for post-office box 8015 and that Nguyen was given individual authorization to receive mail in the box in October 2008. The jury also heard that benefit checks for several individuals had been mailed to this box after Nguyen obtained authorization. Special Agent Fenton of the SSA testified that benefit payments intended for the same individuals were then deposited into Nguyen's bank accounts or into accounts she held jointly with her daughter. As stated earlier, the evidence need not preclude every outcome other than guilty, and here, based on this evidence, we conclude that a reasonable jury could have found beyond a reasonable doubt that Nguyen committed the charged offenses. *See Ramirez*, 362 F.3d at 524. Accordingly, we reject Nguyen's challenge to the sufficiency of the evidence on the counts that arose from her use of the post-office box.

C.

We next turn to Nguyen's arguments related to sentencing. Nguyen contends that the court erred by enhancing her sentence under USSG § 2B1.1(b)(2)(A) because her offense did not involve at least ten victims. At sentencing, the district court rejected her challenge, stating that Nguyen's ten victims included "governmental victims," "banks," and "the persons whose identities were usurped for purposes of improper financial gain." Nguyen concedes on appeal that the state of Iowa, the federal government, an individual named H.L., and U.S. Bank qualify as victims. However, she argues that the court erred by finding that her offenses victimized at least six other individuals or entities. We review the court's factual finding regarding the number of victims for clear error. *United States v. Cunningham*, 593 F.3d 726, 732 (8th Cir. 2010). The court's finding must be supported by a preponderance of the evidence. *United States v. Miell*, 661 F.3d 995, 1000 (8th Cir. 2011).

The Guidelines define the term "victim" as "any person who sustained any part of the actual loss" resulting from the defendant's criminal offense. USSG § 2B1.1 cmt. n.1. In cases involving means of identification, a "victim" alternatively is defined as "any individual whose means of identification was used unlawfully or without authority." USSG § 2B1.1 cmt. n.4(E). Victims may be "individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies." USSG § 2B1.1 cmt. n.1. Applying these definitions, we conclude that the court did not clearly err when it concluded that there were ten or more victims of Nguyen's frauds.

First, the evidence at trial established that Nguyen fraudulently used the identifying information of Q.N., C.P., and T.N. to receive SSI and other benefits. *See United States v. Adejumo*, 772 F.3d 513, 528 (8th Cir. 2014), *cert. denied sub nom. Okeayainneh v. United States*, 575 U.S. ---, 135 S. Ct. 1869 (2015) (considering evidence presented at trial to determine the number of victims under USSG § 2B1.1).

A special agent from the SSA testified that benefit checks had been issued for these individuals and either sent to the post-office box associated with Nguyen or directly deposited into Nguyen's bank accounts. The vast majority of these checks were issued while the intended recipients were out of the country. Because the evidence showed that Nguyen unlawfully used the identifying information of these individuals, they qualified as victims under § 2B1.1. *See id.*

In addition, the Government presented evidence showing that Nguyen unlawfully used the identities of two other individuals—C.N. (Nguyen's sister-in-law) and N.P.—to obtain food assistance. C.N. stated in an interview with an SSA agent that she never had applied for or received food assistance. However, the agent determined that the state of Iowa had paid food-assistance benefits intended for C.N. using a Des Moines address associated with Nguyen. Benefits also were paid to N.P. at the same Des Moines address associated with Nguyen, even though N.P. was not in the country at the time. Such evidence supports the court's conclusion that Nguyen used the means of identification of these two individuals unlawfully to obtain benefits.[5] Thus, they also qualified as victims.

Finally, the presentence investigation report ("PSR") listed six other individuals—N.D., S.N., P.P., T.L., T. D., and H.T.—named as payees on the checks deposited into an account maintained by Nguyen. Nguyen objected to the inclusion of these individuals as victims, and she alleges that the court clearly erred by overruling her objection because the evidence did not show that they "lost money at the hands of [] Nguyen." We find this contention unavailing. As an initial matter, this objection relies on an improperly limited definition of "victim." In cases involving means of identification, "victims" include not only those who suffered

---

[5]Under the relevant Guidelines provision, "means of identification" refers to any name or number used to identify a specific, non-fictitious individual, including the individual's name, date of birth, or official identification number. USSG § 2B1.1. cmt. n.1 (citing 18 U.S.C. § 1028(d)(7)).

financial losses but also those whose means of identification were used unlawfully. USSG § 2B1.1 cmt. n.4(E). We find that a preponderance of the evidence supports the district court's conclusion that Nguyen used these individuals' means of identification unlawfully. During trial, a bank employee testified that checks intended for these individuals were deposited into an account maintained by Nguyen. The employee specifically noted that, on several occasions, the individuals named as payees on the checks were not authorized to make transactions on the account. This fact undermines Nguyen's suggestion that the named payees made the deposits themselves. Because Nguyen maintained the account, the court fairly could conclude that Nguyen unlawfully used the identities of these individuals listed in the PSR to obtain funds as part of her scheme. In light of the evidence, we see no clear error in the court's decision to include these individuals as victims. Having found no clear error for the above-named individuals, we uphold the two-level enhancement. We thus need not address Nguyen's contention that any other individuals or entities identified by the court failed to qualify for the purpose of USSG § 2B1.1(b)(2)(A).

We conclude by addressing Nguyen's challenge to the substantive reasonableness of her sentence. We review for abuse of discretion. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). In substantive-reasonableness review, we "take into account the totality of the circumstances." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007). "A sentence is substantively unreasonable 'if the district court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors.'" *United States v. Boelter*, 806 F.3d 1134, 1136 (8th Cir. 2015) (per curiam) (quoting *United States v. Lozoya*, 623 F.3d 624, 626 (8th Cir. 2010)). "A sentence within the Guidelines range is accorded a presumption of substantive reasonableness on appeal." *United States v. Vaughn*, 519 F.3d 802, 805 (8th Cir. 2008) (quoting *United States v. Robinson*, 516 F.3d 716, 717 (8th Cir. 2008)).

Nguyen contends that her sentence was substantively unreasonable because the court did not adequately weigh the mitigating factors discussed in her PSR. However, the record contradicts this assertion. At sentencing, the district court explained that it considered the PSR, the mitigating factors presented by Nguyen, and the statutory factors listed in 18 U.S.C. § 3553. *See United States v. Townsend*, 617 F.3d 991, 994 (8th Cir. 2010) (per curiam) ("Although a district court is required to consider each of the § 3553(a) factors in determining the proper sentence to impose, it need not 'categorically rehearse each of the [§] 3553(a) factors on the record when it imposes a sentence as long as it is clear that they were considered.'" (quoting *United States v. Dieken*, 432 F.3d 906, 909 (8th Cir. 2006) (alteration in original))). Although the court acknowledged Nguyen's possible mental and physical impairments and her claims that she lacked understanding of the criminal nature of her conduct, the court weighed heavily the "very serious" nature of Nguyen's offenses, which involved fraud committed in "a very large number of means and ways" that occurred "repeatedly over a long period of time." The court also expressed a desire to protect the public from Nguyen, noting that she engaged in additional criminal activity even while on release following her conviction. The court stated its aim to deter such criminal conduct in the future.

We afford the district court wide latitude to consider these and other relevant factors and to assign some factors greater weight than others. *United States v. Deering*, 762 F.3d 783, 787 (8th Cir. 2014). A district court does not abuse its discretion "[s]imply because [it] weigh[s] the relevant factors more heavily than [the defendant] would prefer." *United States v. Richart*, 662 F.3d 1037, 1054 (8th Cir. 2011). Indeed, "it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *Id.* at 1053 (quoting *Feemster*, 572 F.3d at 464). Based on the record, we conclude that Nguyen has not rebutted the presumption of reasonableness accorded her sentence of 87 month's imprisonment, a sentence at the bottom of her advisory guidelines range. The court did not abuse its discretion.

## III.

For the foregoing reasons, we direct the district court to vacate Nguyen's conviction on count 18, including the associated $100 special assessment. We otherwise affirm Nguyen's convictions and sentence.

_____